558 So.2d 93 (1990)
Elizabeth CUNNINGHAM, Fred N. Harris, James Paul, III, George A. McCoy, Wilma S. Smith, Clifford Brown, Judith Brown, Charles O'Neal, Herman Harris, Hobart G. Creamer, S. Ross Williams, Sr., Nathan P. McLaughlin, Henry Caudill, Jesse D. O'Neal, James E. Lewis, Mary Jane Creamer, Denise Barbara Williams, Joseph N. Hogue, Dinah M. Taylor, Mary Master, and Teresa Cooner, Appellants,
v.
ANCHOR HOCKING CORPORATION, Formerly Known As Anchor Hocking Glass Corporation, Anchor Hocking Glass Container Corporation, Formerly Known As Anchor Hocking Corporation, and Anchor Glass Container Corporation, Formerly Known As Anchor Hocking Glass Corporation, Appellees.
No. 88-1512.
District Court of Appeal of Florida, First District.
March 1, 1990.
Rehearing Denied April 6, 1990.
*94 Tyrie A. Boyer of Boyer, Tanzler & Boyer, Jacksonville, for appellants.
Alan C. Sundberg, A. Broaddus Livingston, and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellee Anchor Hocking Corp.
Harold H. Catlin of Howell, Liles & Milton, Jacksonville, for appellee Anchor Glass Container Corp.
BOOTH, Judge.
This cause is before us on appeal from the trial court's dismissal with prejudice of appellants' complaint and from the court's rulings adverse to appellants on several discovery matters. We reverse in part, affirm in part, and remand.
Appellants, workers in appellees' glass manufacturing plant in Jacksonville, filed a joint complaint alleging that as a result of the intentional conduct of appellees, they were exposed to toxic substances resulting in respiratory problems, liver damage, brain tumors, pulmonary disease, cancer, and other disorders.
The issues are: (1) whether the allegations of battery and fraud and deceit are sufficient to overcome the exclusivity provision of the Workers' Compensation Act (Section 440.11, Florida Statutes); (2) whether the trial court erred in dismissing claims based on public nuisance (Section 376.205, Florida Statutes); (3) whether the trial court erred in dismissing claims based on common law and statutory strict liability (Section 376.313, Florida Statutes); (4) whether the trial judge erred in prohibiting appellants' attorneys from showing certain photographs of appellees' premises to witnesses during depositions; and (5) whether the trial judge erred in ordering appellant Cunningham to divulge the names of all persons with knowledge of the alleged special *95 clean-up and/or the destruction of evidence in response to appellants' lawsuit.

I. INTENTIONAL TORTS
In Fisher v. Shenandoah General Construction Company, 498 So.2d 882 (Fla. 1986), and Lawton v. Alpine Engineering Products, Inc., 498 So.2d 879 (Fla. 1986), the Florida Supreme Court held that an employee can bring a cause of action in tort if the employer's actions exhibit a deliberate intent to injure or if the employer engages in conduct which is substantially certain to result in injury or death.[1] The second amended complaint in the instant case alleged in part as follows:
5. As a direct and proximate result of the intentional conduct of the defendants, or one of them, hereinafter alleged, the plaintiffs suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of previously existing conditions.
... .
10. The defendants' failure to warn or advise the plaintiffs and other employees of the presence of the toxic substances at the defendants' plant and as to the health hazards and dangers posed thereby, as hereinafter alleged, was conscious and intentional... was accomplished and performed by the defendants ... with a deliberate intent to injure the plaintiffs; alternatively, the conduct ... was substantially certain to result in injury to or the death of the plaintiffs.
... .
12. During the period of the plaintiffs' employment by the defendants at said plant or facility for the manufacture of glass, glass products, and other products, the defendants intentionally battered the plaintiffs by deliberately and knowingly exposing the plaintiffs to toxic substances. ...
(a) The defendants knew that toxic substances were present in virtually every area of said plant.
(b) ... [T]he toxicity or hazardous nature of the toxic substances was deliberately concealed from the plaintiffs in that the defendants intentionally removed or destroyed or caused to be removed or destroyed warning labels on the packages in which one or more of the toxic substances were packaged before such toxic substances were placed into the stream of production at the plant and before the daily workers such as the plaintiffs could see or read the labels, which warned of the health dangers posed by the toxic substances and which prescribed safety measures.
(c) The defendants deliberately diverted a smokestack designed to vent dangerous fumes comprised by or resulting from the toxic substances into the outdoor atmosphere such that the dangerous fumes and toxic substances, some of which were vaporous, gaseous or difficult to detect, emptied back into the plant or building and came into contact with the plaintiffs' skin, eyes and respiratory systems.
... .
(e) In addition, the defendants knew that cleaning solvents, oil laced with sulphur and graphite, acidic vapors, and other toxic substances were airborne in the plant and that manufacturers of the ingredients for defendants' glass products recommended safety equipment (such as gloves, masks or respirators) so as to avoid contact of the toxic substances with human beings. Despite such knowledge, the defendants intentionally did not advise the plaintiffs of the dangers; did not make safety equipment available to the plaintiffs, or provided inadequate safety equipment, such as cotton gloves which absorbed rather than repelled the chemicals; knowingly and intentionally failed to heed the levels of *96 the toxic substances airborne in the plant; knowingly and intentionally failed to repair the smokestack in a proper manner or to replace it with a proper environmental system, thereby intentionally subjecting its employees to hazardous levels of dangerous substances; and knowingly and intentionally failed to advise the plaintiffs of the substantial health risks posed by the toxic substances or of the manufacturers' warning labels which had been removed by the defendants.
(f) [D]efendants knowingly exposed the plaintiffs to an intense density of the toxic substances with specific intent to injure the plaintiffs for the sake of making a greater profit... . Despite such knowledge, not only did the defendants fail to provide adequate ventilation, but also ... on occasion simply turned off the existing inadequate exhaust system, thereby further deliberately intensifying the offensive contact between said toxic substances and the plaintiffs.
13. The said acts and conduct of the defendants were done and accomplished maliciously, with an utter indifference to the plaintiffs' rights and safety, and wantonly... .
A third amended second count further alleged:
17.-A. During the period of the Plaintiffs' employment by the Defendants, the Defendants made the following material and false representations and misrepresentations to Plaintiffs:
(a) The Defendants falsely represented to the Plaintiffs that the materials utilized in the manufacture of the Defendants' glass products did not require that workers adjacent to the Defendants' machinery which piped and molded such products wear masks or gloves... . Defendants had, as a part of a fraudulent and malicious scheme to save money at the expense of the Plaintiffs' health, destroyed or discarded warning labels which indicated that special clothing or safety equipment should be worn. The Defendants instead represented that only the person who mixed the products together in "the hot area" need have a mask... . The Defendants further represented falsely that some employees who were to handle some of the chemicals would be adequately protected by cotton gloves, knowing that such gloves were insufficient protection and were contrary to the manufacturers' warnings that contact with skin should be avoided, inasmuch as such cotton gloves did not prevent contact between the toxic substances and the skin.
(b) The Defendants falsely represented to the Plaintiffs and other employees that the Defendants had an adequate system for exhaust or ventilation of toxic fumes which was in effect during working hours. However, in actuality the Defendants deliberately turned their system off, and in actuality the "system" was a scheme by which toxic fumes were distributed throughout the building rather than appropriately disbursed. The Defendants purposely misrepresented the adequacy of the exhaust system because the Defendants wished to avoid the cost and expense of providing an exhaust system into the atmosphere, which would have required environmental safety devices.
... .
18... . Defendants made deliberate and knowing misrepresentations to Plaintiffs designed to cause and actually causing detrimental reliance by Plaintiffs... . [emphasis added]
Based on the above allegations, appellants properly alleged a cause of action in intentional tort outside the scope of the Workers' Compensation Act. Taking the allegations in the light most favorable to appellants as the nonmoving parties, we hold the complaint alleges an intent to injure appellants and a substantial or virtual certainty that the appellees' action would result in injury or death to appellants. Thus, the complaint alleges that appellees diverted the smokestack so that fumes would flow into, rather than outside of, the plant, and that they periodically turned off the plant ventilation system, thereby intensifying the level of exposure. The complaint further alleges that appellees removed *97 manufacturers' warning labels on toxic substance containers, misrepresented the toxic nature of substances, and knowingly provided inadequate safety equipment, while misrepresenting the danger or extent of toxicity in the plant and the need for proper safety equipment.
The present case differs from Fisher, wherein the complaint alleged that "in all probability" injury would result to the employee from a one-time exposure to a dangerous gas. Here, the allegations are that injury was "a substantial certainty" and that there was repeated, continued exposure that was intentionally increased and worsened by appellees' deliberate and malicious conduct. Accordingly, the counts sounding in battery, fraud and deceit, and loss of consortium were sufficient to state a cause of action outside the scope of workers' compensation and should not have been dismissed.

II. STRICT LIABILITY-ULTRA HAZARDOUS ACTIVITY; PUBLIC NUISANCE
We find no reversible error in the trial court's dismissal of Count III, strict liability, based on the exclusivity provision of the Workers' Compensation Act, and the dismissal of Count IV, public nuisance, for failure to state a cause of action.
The workers' compensation exclusivity provision contains no exception for causes of action based on strict liability for ultrahazardous activity. Neither does case law provide such an exception. On the contrary, in Crosby v. Regional Utility Board, City of Gainesville, 400 So.2d 1024 (Fla. 1st DCA 1981), this court held that an employee injured while engaged in a hazardous occupation as defined by Chapter 769, Florida Statutes, was nonetheless limited to Workers' Compensation Act remedies.
In Count IV, appellants alleged that appellees' actions rendered the plant a "public nuisance inconsistent with the interest common to the general public in public safety"; however, they failed to allege injury to "the health of the citizens in general" or corruption of public morals, as is required by Section 823.01, Florida Statutes. The complaint alleged, rather, that appellees' actions caused injuries to certain individuals. As the court noted in Philadelphia Electric Co. v. Hercules, 762 F.2d 303, 316 (3d Cir.Pa. 1985), cert. denied, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (U.S. 1985), when a party "has suffered no `particular damage' in the exercise of a right common to the general public, ... it lacks standing to sue for public nuisance." (emphasis added).

III. STRICT LIABILITY; ANTIPOLLUTION STATUTES
We hold that Count V of the complaint fails to state a cause of action pursuant to Section 376.205, Florida Statutes, but states a cause of action as to Section 376.313, Florida Statutes. The following allegations are relevant:
31. The toxic substances utilized by the defendants in their manufacture of glass products included "pollutants" within the meaning of Chapter 376 of the Florida Statutes in that such substances included oil as well as derivatives of ammonia and chlorine.
32. The defendants' plant at all times material hereto was a "facility" within the meaning of Chapter 376 of the Florida Statutes in that the plant constituted a nonresidential location containing stationary tanks for pollutants with individual storage capacities greater than 550 gallons.
33. During the period of the plaintiffs' employment by the defendants, the defendants violated the provisions of Chapter 376 of the Florida Statutes by virtue of the following: the defendants committed ongoing discharges of pollutants contrary to the provisions of Chapter 376 of the Florida Statutes by permitting pollutants to discharge upon the land and premises at said plant; by permitting the pollutants stannic chloride and titanium tetrachloride to leak or spill onto said premises so as to combine with water or moisture and form airborne hydrochloric acid; by permitting chemical *98 sprays of said pollutants, along with oil laced with sulphur and graphite, to seep, leak, smoke and splatter upon the premises, and by emptying and discharging gaseous or particulate pollutants directly onto their premises and their land, where the plaintiffs were working.
34. The said discharges were conducted intentionally, willfully and wantonly by the defendants, in that the defendants took measures to conceal the dangerous nature of the discharge by destroying and discarding manufacturers' warning labels in connection with the packaging in which the pollutants or their constituents arrived, by deliberately lowering the smokestack on the premises so as to empty or discharge the pollutants onto the premises, and by shutting down or turning off the exhaust or ventilation systems at the premises periodically. Such deliberate acts by the defendants were done maliciously and with utter disregard to the rights and safety of the plaintiffs.
35. As a direct and proximate result of the foregoing, the plaintiffs suffered the injuries set forth in the general allegations above, which include permanent respiratory problems, asbestosis, chronic lung disease, brain tumors, liver damage, chronic obstructive pulmonary disease, cancer, hypokalemia, and/or other disorders stemming from exposure to the toxic substances.
Appellants failed to allege that the complained-of discharges will ultimately pollute state lands or waters as required by the "Pollutant Spill Prevention and Control Act," Sections 376.011 through 376.17, and Sections 376.19 through 376.21, Florida Statutes. The legislative purpose of the Act, set forth in Section 376.021(4) and titled "Legislative intent with respect to pollution of coastal waters and lands," is to protect the seacoast of the state by using the state police power to:
(a) Deal with the hazards and threats of danger and damage posed by such transfers [of pollutants between vessels, between onshore facilities and vessels, between offshore facilities and vessels, and between terminal facilities within the jurisdiction of the state and state waters] and related activities;
(b) Require the prompt containment and removal of pollution occasioned thereby; and
(c) Establish a fund to provide for the inspection and supervision of such activities and guarantee the prompt payment of reasonable damage claims resulting therefrom.
Thus, we hold that the Count V allegations do not come within the purview of Sections 376.011 through 376.21, Florida Statutes. The allegations, therefore, do not state a cause of action under Section 376.205 ("Individual cause of action for damages under ss. 376.011-376.21.").
However, another portion of Chapter 376, Florida Statutes, Sections 376.30 through 376.319, deals with environmental and health hazards, as well as with danger and damage to surface and ground waters posed by the storage, transportation, and disposal of pollutants. Section 376.30(2)(b), Florida Statutes, declares the legislative intent to deal with discharge of pollutants that pose a great danger to citizens of the state.
Section 376.313, Florida Statutes ("Nonexclusiveness of remedies and individual cause of action for damages under ss. 376.30-376.319."), provides, in part, as follows:
(1) The remedies in ss. 376.30-376.319 shall be deemed to be cumulative and not exclusive.
(2) Nothing in ss. 376.30-376.319 requires the pursuit of any claim against the Water Quality Assurance Trust Fund or the Inland Protection Trust Fund as a condition precedent to any other remedy.
(3) Notwithstanding any other provision of law, nothing contained in ss. 376.30-376.319 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319. Except as otherwise provided in subsection (4), in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner. *99 Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred. The only defenses to such cause of action shall be those specified in s. 376.308.[[2]]
We find no basis for holding the above-quoted provisions inapplicable under the allegations of the complaint's paragraph 33, quoted supra, which includes allegations that appellees violated Chapter 376 by permitting pollutants to discharge upon the land and premises, and by permitting the following to occur:
[T]he pollutants stannic chloride and titanium tetrachloride to leak or spill onto said premises so as to combine with water or moisture and form airborne hydrochloric acid; by permitting chemical sprays of said pollutants, along with oil laced with sulphur and graphite, to seep, leak, smoke and splatter upon the premises, and by emptying and discharging gaseous or particulate pollutants directly onto their premises and their land, where the plaintiffs were working.
Appellees contend, however, that the statute does not apply because (1) the pollutants were gaseous, and (2) the alleged events occurred prior to the statute's effective date.[3] As to the pollutants' form, Section 376.301(12), Florida Statutes, defines "pollutants" as follows:
"Pollutants" includes any "product" as defined in s. 377.19(11), pesticides, ammonia, chlorine, and derivatives thereof, excluding liquefied petroleum gas. [emphasis added]
Thus, Section 376.301(12), Florida Statutes, specifically includes ammonia, chlorine, and derivatives thereof as "pollutants." Ammonia and chlorine are both, by definition,[4] gaseous materials. The complaint here alleges pollution caused by derivatives[5] of ammonia and chlorine. Therefore, we find no merit to appellees' contention that the statute is inapplicable to gaseous materials or to the specified derivatives of chlorine and ammonia.
As to appellees' claim of retroactive application of Chapter 376, the pleadings before us do not support that contention, and it is not a basis for dismissal. In order to recover, appellants must, of course, prove causes of action arising after the statute's effective date.[6]

IV. PHOTOGRAPHS OF PREMISES
The trial judge also erred in prohibiting appellants' attorneys from showing photographs of the appellees' premises to witnesses who were being deposed. The basis of the trial court's ruling was that the photographs were taken without filing a request for inspection under Rule 1.350, Florida Rules of Civil Procedure, and were in violation of a previously-entered court order allowing inspection of the premises at certain dates and times.
Rule 1.350(a) provides in part as follows:
Any party may request any other party ... to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property or any designated object or operation on it within the scope of Rule 1.280(b). [emphasis added]
The language in the rule is permissive, and its purpose is to facilitate discovery from a *100 noncooperating party. The previous discovery order entered specified a particular date on which appellees were required to allow entry on the premises for discovery purposes and did not state that other photographs and/or future discovery were prohibited. The instant photographs do not violate the previous discovery order and were not properly excluded on that basis. Further, in the event the person taking the photographs was improperly on the premises, for example, as a trespasser,[7] suppression of the photographs under the rule applicable to criminal proceedings and based on the Fourth Amendment is inappropriate. We find no basis for extending the criminal rule to civil suits.

V. DISCOVERY OF PERSONS HAVING KNOWLEDGE
The trial court, however, did not err in requiring appellant Cunningham to divulge the identity of all persons with knowledge of a special clean-up or the destruction of evidence. Rule 1.280(b)(1), Florida Rules of Civil Procedure, provides in part:
Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including... the identity and location of persons having knowledge of any discoverable matter.
The statements taken by appellant Cunningham from employees in anticipation of the lawsuit, and her investigative reports, are protected by the work product rule. However, the trial court may require her to divulge the names and addresses of anyone having relevant information.
The Florida Supreme Court held, in Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 113 (Fla. 1970):
[T]hat a party may be required to respond on behalf of himself, his attorney, agent, or employee and to divulge names and addresses of any person having relevant information as well as to indicate generally the type of information held by the person listed. [emphasis added]
See Florida Power & Light Co. v. Limeburner, 390 So.2d 133 (Fla. 4th DCA 1980). The rule is stated in Dade County School Board v. Soler, 534 So.2d 884, 885 (Fla. 3d DCA 1988), as follows:
Although a party may be ordered to provide the names and addresses of individuals who have furnished statements in anticipation of litigation, "absent rare and exceptional circumstances," Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 113 (Fla. 1970), the party may not be required to furnish the statements themselves because such statements are work product. [emphasis added; citations omitted]
This court has also held that "Rule 1.280(b)(2) does not completely immunize from discovery the information contained in the subject statements, nor the identities of the persons having knowledge of these facts." Landrum v. Tallahassee Memorial Regional Medical Center, Inc., 525 So.2d 994, 996 (Fla. 1st DCA 1988). Rule 1.280(b)(1), Florida Rules of Civil Procedure, provides in part:
Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. [emphasis added]
Accordingly, we affirm in part, reverse in part, and remand for further consistent proceedings.
ERVIN and WENTWORTH, JJ., concur.
NOTES
[1] See also Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099 (Fla. 1989) (holding sexual harassment falls outside of the exclusivity provision of the workers' compensation statute).
[2] Section 376.308, Florida Statutes, lists various defenses available including act of war, of government, or of God, but does not list immunity under the Workers' Compensation Act, Chapter 440, Florida Statutes.
[3] Chapter 83-310, § 84, Laws of Fla. (effective July 1983).
[4] Webster's New World Dictionary 45, 250 (2d college ed. 1976).
[5] The chemical definition of "derivative" is: "a substance derived from, or of such composition and properties that it may be considered as derived from, another substance by chemical change, esp. by the substitution of one or more elements or radicals." Webster's New World Dictionary 380 (2d college ed. 1976).
[6] There are some 21 individual plaintiffs who are, or have been, workers at appellees' plant and whose causes of action may arise at different times and under one or more of the counts of the complaint.
[7] It is not clear whether some photographs, apparently of a loading area or railroad siding, were taken from a position on appellees' property.