632 So.2d 123 (1994)
GENERAL MOTORS ACCEPTANCE CORPORATION, a foreign corporation and Herman M. Johnson, Appellants,
v.
Raymond A. David, Jr., As Personal Representative of the Estate of Janice F. David, deceased; and Robert H. Highfill, Jr., as Personal Representative of the Estate of Denise D. Highfill, deceased, Appellees.
No. 93-1792.
District Court of Appeal of Florida, First District.
February 9, 1994.
Rehearing Denied March 14, 1994.
*124 Thomas M. Burke and Lavinia K. Dierking of Cabaniss, Burke & Wagner, P.A., Orlando, W.L. Kirk and George Meros of Rumberger, Kirk & Caldwell, P.A., Tallahassee, for appellants.
Fred M. Abbott of A. Abbott Law Offices, P.A., Jacksonville, Alan C. Sundberg and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellees.
DAVIS, Judge.
Appellants, General Motors Acceptance Corporation (GMAC) and Herman M. Johnson appeal from a non-final order denying their motion for summary judgment. The trial court ruled as a matter of law that, viewed in the light most favorable to the nonmoving parties, the evidence would be sufficient to deny appellants workers' compensation immunity. Accepting the facts as described in the trial court's order, we conclude that the trial court erred in its interpretation of the law.[1] Appellants claim immunity pursuant to section 440.11(1), Florida Statutes (1991). Section 440.11(1) grants employers and employees engaged in managerial or policy making decisions immunity from tort actions by employees. For the following reasons, we reverse.
GMAC, a financial services company engaged in automobile financing, purchased James Pough's contract on or about December 26, 1988, from Coggin Pontiac, Inc. (Coggin) in violation of its own retail buying procedures. Information contained in Pough's credit application and his contract indicated that the chances were very low that Pough would make all the payments under his contract. On January 24, 1990, Pough voluntarily returned his car to GMAC's office because he had experienced a substantial reduction in his income and could no longer afford the car. GMAC sold the car and applied the net proceeds to Pough's debt, leaving a deficiency balance of $6,394.00. GMAC sent two deficiency notices stating the amount owed, but took no further action to collect. GMAC's last contact with Pough was when it sent a second deficiency notice in April 1990. Pough's last contact with GMAC was on June 8, 1990, when he contacted GMAC to discuss making payments.
On June 17, 1990, Pough went on a rampage in which he shot four people, killing two of them, injured a woman with his car and held up a convenience store. On June 18, 1990, Pough went to GMAC's Jacksonville office and opened fire on GMAC's customers and employees. Pough killed nine persons, including employees Janice David and Denise Highfill, and wounded four others. Pough then killed himself. Highfill was employed as a customer service representative. David was employed as a customer information supervisor.
At the time GMAC purchased Pough's contract, GMAC had an arrangement with Coggin in which Coggin would hold down GMAC's losses on cars repossessed from unqualified buyers. Johnston, the branch manager of GMAC's Jacksonville office, pursued buying practices in which individuals who did not qualify under GMAC's credit guidelines had their contracts purchased from Coggin. After that arrangement ended, the number of repossessions from the Jacksonville GMAC office greatly increased.
Prior to Pough's shootings on June 18, 1990, Johnston issued a series of memoranda to all Jacksonville dealerships which applied for financing, in which he expressed concern about the people to whom GMAC was extending *125 credit. Johnston also applied pressure on GMAC employees to collect on delinquent accounts. In addition, GMAC's president and vice-president issued memoranda to branch managers concerning the dangers created to GMAC employees by the failure to follow GMAC collection and repossession policies.
Prior to Pough's rampage, GMAC Jacksonville office employees experienced confrontations with angry customers, some of whom threatened them with physical harm. GMAC's Jacksonville office did not have security measures to prevent customers from having direct access to GMAC employees.
At the time of the shootings by Pough on June 18, 1990, decedents David and Highfill were employees of GMAC and were killed in the course and scope of their employment. GMAC secured workers' compensation coverage for the decedents. The personal representatives of David and Highfill's estates filed complaints against GMAC in which plaintiffs alleged that GMAC knowingly and intentionally directed decedents to work in a credit/lending office when GMAC knew, because of the complete lack of security, decedents were with substantial certainty subject to open attacks by armed felons. Plaintiffs further alleged that GMAC engaged in credit/lending practices and acquired loans placed with individuals such as James Pough who had a criminal history and history of violence and bad credit and who resided in an area known for drugs and violence. Plaintiffs also alleged that Johnston, as the manager of GMAC, was grossly negligent in failing to install or recommend installation of even rudimentary security which was readily available and affordable and which could have protected decedents from death and by encouraging collection practices and implementing standards for the acquisition of loans which encouraged a violent response from violent individuals residing in areas where Johnston knew that arguments were regularly settled through a resort to violence and gunfire.
Appellants moved for summary judgment on the ground that they were immune from suit pursuant to section 440.11(1), Florida Statutes (1991). In denying appellants' motion, the trial court erred.
An employer who properly secures workers' compensation coverage for its employees is immune from suit so long as the employer has not engaged in an intentional act designed to result in injury or death or conduct which is substantially certain to result in injury or death to an employee.[2]Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882, 883 (Fla. 1986), citing Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972); Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879, 880 (Fla. 1986). This standard requires more than a strong probability of injury. It requires virtual certainty. Fisher, 498 So.2d at 884; Lawton, 498 So.2d at 880. In Fisher, the Florida Supreme Court stressed that a strict interpretation must be given to the definition of intentional tort because nearly every accident, injury and sickness occurring at the work place results from someone intentionally engaging in some triggering action. Fisher, 498 So.2d at 884 (citing Millison v. E.l. DuPont de Nemours & Co., 101 N.J. 161, 501 A.2d 505 (1985)). The Supreme Court further quoted from Prosser & Keeton on Torts 36 (W. Keeton 5th ed. 1984):
[T]he mere knowledge and appreciation of a risk  something short of substantial certainty  is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.
498 So.2d at 884.
Appellees rely on Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1307 (Fla. 1991) and Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), rev. denied, 574 So.2d 139 (Fla. 1990) to support their argument that appellants' conduct was substantially *126 certain to result in injury or death. The factual situation presented in the present case is distinguishable from Connelly and Cunningham.
In Cunningham, workers in a glass manufacturing plant alleged that as a result of the intentional conduct of their employer, they were exposed to toxic substances resulting in various physical ailments. Plaintiffs alleged that the employer deliberately diverted a smoke stack, designed to vent dangerous fumes, so that the dangerous fumes and toxic substances would flow into, rather than outside of, the plant, and that the employer periodically turned off the plant ventilation system, thereby intensifying the level of exposure. Plaintiffs further alleged that the employer removed manufacturer's warning labels on toxic substance containers, misrepresented the toxic nature of the substances and knowingly provided inadequate safety equipment, while misrepresenting the danger or extent of toxicity in the plant and the need for proper safety equipment. The complaint alleged that this was done with a deliberate intent to injure the plaintiffs.
In Connelly, plaintiff alleged that an employer intentionally refused to provide required equipment and maintenance of its aircraft, with full knowledge that the aircraft was in disrepair and on the verge of a catastrophic breakdown. Plaintiff further alleged that the aircraft was not air worthy due to serious violations of FAA regulations. The court found that it was reasonable to conclude that the problems with the aircraft would cause to a substantial certainty the aircraft to succumb to the forces of gravity, causing serious injury or death to those aboard. Connelly, 568 So.2d at 451. The court further found that where an employer withholds knowledge of a defect or hazard which poses a grave threat of injury so that an employee is not permitted to exercise an informed judgment whether to perform the assigned task, the employer will be considered to have acted in a belief that harm is substantially certain to occur. Id. (citing Jones v. VIP Dev. Co., 15 Ohio St.3d 90, 96, 472 N.E.2d 1046, 1052 (1984)).
In both Connelly and Cunningham, plaintiffs alleged ultimate facts to support a finding that injury or death was substantially certain to occur. Further, both cases involved conduct in which the employer deliberately or maliciously withheld information of a known defect or hazard which posed a great threat of injury or death, thereby eliminating the chance for the employee to exercise an informed judgment whether to perform the assigned tasks.
We also note that an attempt to fit a case within Connelly or Cunningham by alleging "virtual certainty" of injury or death will not save an otherwise deficient complaint. See Timones v. Excel Indus. of Florida, 631 So.2d 331 (Fla. 1st DCA 1994) (complaint alleged that employer knowingly required employees to use antiquated machinery which had insufficient safety features, disregarded recommendations from safety consultants about the need to take appropriate safety measures, that at least 48 employees had been injured by the unsafe machinery and it was substantially certain that employees such as plaintiff would be injured); Folk v. Rite Aid of Florida, Inc., 611 So.2d 35, 38 (Fla. 4th DCA 1992) (complaint alleged that security guard shot and killed during armed robbery was hired to survey, confront and apprehend criminals during and immediately following criminal acts, employer armed its security personnel only with MACE and prohibited them from carrying a firearm and that the employer's policy was substantially certain to result in injury or death because employer had knowledge that the store where security guard worked had previously been the target of criminal activities involving theft, calculated that additional robbery attempts would occur and security guard was there to foil such attempts).
The facts viewed in the light most favorable to appellees fail to establish, under the test enunciated in the previously cited cases, that appellants' conduct was substantially or virtually certain to result in injury or death. There being no genuine issues of material fact, we reverse the order denying appellants' motion for summary judgment and remand with directions that the trial court enter summary judgment for appellants.
BOOTH and LAWRENCE, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to rule 9.130(a)(3)(C)(vi), Florida Rules of Appellate Procedure, providing for review of non-final orders that determine that a party is not entitled to workers' compensation immunity as a matter of law.
[2] This standard was recently reaffirmed by the Florida Supreme Court in Eller v. Shova, 630 So.2d 537 (Fla. 1993).