**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAISY ALMEGARD, personal
representative of the estate of Benna J.
Almegard, deceased,

      Plaintiff-Appellant,

v.

SAN JUAN PILOT TRAINING, INC.,
doing business as Mesa Pilot
Development; and MESA AIRLINES,
INC., a corporation,

      Defendants-Appellees.

No. 96-2279
(D.C. No. CIV-94-677-JP)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **LUCERO**, and **MURPHY**, Circuit Judges.

Benna Almegard died when a small aircraft in which he was a passenger crashed

into Mt. Wilson in Colorado. His wife, Daisy Almegard, as personal representative of her

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

husband's estate, brought this wrongful death action against Mesa Airlines, Almegard's one time employer, and San Juan Pilot Training, Inc., the owner of the crash aircraft. The district court granted Mesa's motion for summary judgment, concluding workers' compensation provided Mrs. Almegard's exclusive remedy. Plaintiff asserts error claiming: (1) Mesa was not Almegard's employer for purposes of workers' compensation; or, alternatively, (2) Mesa's conduct rose to the level of an intentional tort. Under either theory, plaintiff maintains, workers' compensation would not bar an action in tort. However, because Mrs. Almegard failed to create a genuine issue of material fact concerning the identity of Almegard's employer, and, because she cannot demonstrate the requisite level of culpability on the part of Mesa, we affirm the grant of summary judgment for Mesa.

In addition, the court granted San Juan's motion for summary judgment against Mrs. Almegard on her negligent entrustment claims. Because plaintiff has failed to raise a genuine issue of fact regarding San Juan's negligence, we affirm.

Mesa originally hired Benna Almegard as a pilot for its flight operations headquartered in Farmington, New Mexico. When Mesa began operating Florida Gulf Airlines, Inc., as a wholly owned subsidiary, Almegard moved to Florida and began flying for Florida Gulf. The following year, Mesa and Florida Gulf merged, leaving Mesa as the surviving corporation. Subsequently, Almegard was temporarily reassigned to Mesa's Farmington operation to begin training as a check airman. A check airman's duties

include flying from Mesa's headquarters to various locations throughout the country to assess the performance capabilities of other pilots.

One April night, Tad Feazell, another Mesa check airman, and Almegard "borrowed" one of defendant San Juan's aircraft and flew from Farmington to Grand Junction, Colorado.[1] That night, while in Grand Junction, Almegard flew two check flights with Mesa pilots. After flying the check flights, Almegard and Feazell departed Grand Junction to return to Farmington. At 4:00 A.M., shortly after takeoff, the plane, with Feazell at the controls, crashed into Mt. Wilson near Telluride, Colorado. Both men were killed. The cause of the crash is unknown.

Almegard's wife applied for and received workers' compensation benefits in Florida where she resided. Subsequently, Mrs. Almegard brought this wrongful death action against defendants Mesa and San Juan.[2]

## A. Mesa Summary Judgment

Prior to trial, Mesa filed a motion for summary judgment asserting Mrs. Almegard's exclusive remedy was workers' compensation. In response, plaintiff argued workers' compensation did not bar her action against Mesa because: (1) Florida Gulf, not

---

[1]Defendant San Juan Pilot Training, Inc., is a wholly owned subsidiary of Mesa and provides flight training to pilots who seek employment with Mesa. Under an "informal agreement" with San Juan, Mesa's check airmen would occasionally pilot San Juan's aircraft to check sights instead of flying on a commercial carrier.

[2]Feazell's survivors also brought a wrongful death action against San Juan, and the district court consolidated the cases. However, Feazell and San Juan settled their action prior to oral argument.

Mesa, was Almegard's actual employer; or, alternatively, (2) Mesa committed an intentional tort.  The district court granted Mesa summary judgment, rejecting both of plaintiff's arguments.

We review the grant of summary judgment de novo, applying the same legal standards as the district court under Fed. R. Civ. P. 56.  *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir. 1997).  Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 1.  Intentional Tort

Under Florida law, "employers are provided with immunity from suit by their employees so long as the employer has not engaged in any intentional act designed to result in or that is substantially certain to result in injury or death to the employee."  *Eller v. Shova*, 630 So. 2d 537, 539 (Fla. 1993).[3]  This "substantial certainty test" requires "more than a strong probability of injury.  It requires **virtual certainty**."  *State v. V.E. Whitehurst & Sons, Inc.*, 636 So. 2d 101, 105 (Fla. Dist. Ct. App. 1994) (emphasis

---

[3]The district court determined Florida law governs this issue, a conclusion neither party challenges.

- 4 -

added).  Under this standard, plaintiff must demonstrate Mesa engaged in an intentional act that was virtually certain to result in Almegard's death.

In support of her claim, Mrs. Almegard argues Mesa overworked its pilots, particularly Feazell, to the extent his fatigue would lead to the death of Almegard.  In fact, the district court found substantial evidence Feazell and Almegard had suffered from excessive fatigue in the months prior to the crash.  However, this evidence is insufficient to create an issue of fact for two reasons.

First, as the district court concluded, the record reveals no evidence Feazell, the pilot of the aircraft, was fatigued on the night of the crash.  On the contrary, the only evidence presented, the testimony of two pilots who saw Almegard and Feazell prior to their fatal flight, indicates Feazell and Almegard did not seem tired.  One of these pilots even asked to accompany the men on their trip.  As the district court noted, "[t]his is inconsistent with plaintiffs' theory that John Feazell was noticeably fatigued on April 28 or 29, as a pilot would not entrust himself to a fellow pilot who he believed to be a flight risk."

More importantly, even if plaintiff had presented competent evidence Feazell was fatigued on the night of the accident and Mesa caused his condition, we do not believe this rises to the necessary level of intentional conduct under Florida law.  We find ***Connelly v. Arrow Air, Inc.***, 568 So. 2d 448 (Fla. Dist. Ct. App. 1990), upon which plaintiff primarily relies, particularly instructive.  In ***Connelly***, an overloaded airplane

- 5 -

crashed killing the crew and all 248 United States servicemen aboard. In a suit filed by the widow of an airline co-pilot, the trial court entered summary judgment for the airline based on workers' compensation exclusivity. In reversing, the appellate court found evidence indicating the airline "**intentionally** misstated its capacity to carry the mandatory maximum weight," "**deliberately** used an average of passenger weights in order to conceal the actual flight load," and "**purposefully**" failed to notify the crew of a mechanical problem. *Id.* at 449-50 (emphasis added). The evidence also revealed each of these affirmative acts proximately contributed to the ultimate accident.

Applying Florida law as reflected in *Connelly* and assuming admission of all plaintiff's evidence, we do not believe plaintiff has created a genuine issue of material fact demonstrating Mesa acted with the requisite culpability. Here, unlike *Connelly*, plaintiff has not presented any evidence Mesa took any affirmative actions to place Almegard's life in danger. *Compare id.* at 450. Moreover, plaintiff presented no evidence Mesa deliberately, wilfully, or purposefully withheld information from Feazell or Almegard. *See, e.g.*, *GMAC v. David*, 632 So. 2d 123, 126 (Fla. Dist. Ct. App. 1994) ("[*Connelly*] involved conduct in which the employer deliberately or maliciously withheld information of a known defect or hazard which posed a great threat of injury or death, thereby eliminating the chance for the employee to exercise an informed judgment whether to perform the assigned tasks."); *Emergency One, Inc. v. Keffer*, 652 So. 2d 1233, 1235 (Fla. Dist. Ct. App. 1995) ("It is particularly significant that [the evidence in

*Connelly* evinced a] strong indication to deceive or cover up the danger involved, so that the employees had no way to apprise themselves of the dangers involved and thereby make a reasoned judgment as to their course of action."). Feazell and Almegard knew their condition better than any other person could have; yet, they still chose to fly. On this record, we cannot find Mesa's conduct rose to the level of intentional conduct required under Florida's standard.

Mrs. Almegard's remaining arguments suffer from a similar absence of evidence demonstrating sufficiently culpable conduct. For instance, plaintiff argues Mesa's conduct was virtually certain to cause the death of Almegard when it allowed Feazell and Almegard to fly over 10,000 feet without oxygen. Yet, the record reveals a portable oxygen system was available in Grand Junction for the pilots' use and neither of these experienced pilots chose to carry the oxygen. Mesa did not "deliberately withhold" the oxygen.

Finally, Mrs. Almegard argues Mesa forced its pilots to violate rules and fly unfit airplanes. However, all of plaintiff's supporting evidence focused on mechanical difficulties with Mesa's airplanes and allegations that Mesa's mechanics were pressured to sign-off on unfit aircraft. It is undisputed the plane in which Almegard flew was not mechanically defective in any manner. Accordingly, any evidence of shoddy maintenance operations is irrelevant to our present inquiry. *Compare* **Connelly**, 568 So. 2d at 450

("There was substantial and competent evidence in the record that defective conditions in the aircraft, ... all known to the employer, were contributing factors in the crash.").

## 2. Almegard's Employer

Plaintiff contends Florida Gulf and Mesa were separate entities; therefore, Florida Gulf was Almegard's employer for workers' compensation purposes. Under this theory, payment of workers' compensation benefits by one entity, Florida Gulf, should not bar an action in tort against a separate entity, Mesa. In support of this argument, plaintiff cites two cases holding an employee of a wholly owned subsidiary who has obtained workers' compensation benefits from the subsidiary may still bring an action in tort against the parent corporation. *See **Gulfstream Land & Dev. Corp. v. Wilkerson***, 420 So. 2d 587 (Fla. 1982); ***Gigax v. Ralston Purina Co.***, 136 Cal. App. 3d 591 (1982).

Here, however, the district court found Mesa and Florida Gulf were "a single entity for purposes of the exclusive remedy analysis." The record provides ample support for this conclusion. It is undisputed Mesa originally formed and operated Florida Gulf as a wholly owned subsidiary. It is also undisputed that, prior to the crash, Mesa and Florida Gulf merged leaving Mesa as the surviving corporation. The merger agreement between Mesa and Florida Gulf provides "the separate existence of Florida Gulf shall cease" upon the effective date of the merger. In addition, the agreement provides for the cancellation of all issued and outstanding shares of Florida Gulf stock. This clearly distinguishes the present case from ***Gigax*** and ***Gulfstream*** where two corporate entities were involved,

each with the attendant status as a separate legal entity. Here, Florida Gulf was no longer a corporation. While it may be a question of fact whether two corporations are separately controlled thus creating two potential defendants, in this case, there is only one corporation and, we conclude, only one employer -- Mesa.

## B. San Juan Summary Judgment

In addition to her claims against Mesa, Mrs. Almegard also brought suit against San Juan, the owner of the crash aircraft, alleging it had negligently entrusted the plane to Feazell. Concluding Mrs. Almegard had failed to create an issue of fact whether San Juan knew or should have known of the alleged dangers of the fatal flight, the district court granted San Juan's summary judgment.

Mrs. Almegard bases her claim on various sections of the Restatement (Second) of Torts which hold lessors and suppliers of chattels liable for negligently failing to make the chattel safe or disclose the chattel's dangerous condition. *See, e.g.*, Restatement (Second) of Torts §§ 390, 408 (1965). She argues San Juan knew or should have known the aircraft in question was defective and failed to make the aircraft safe. Alternatively, Mrs. Almegard maintains San Juan knew or should have known Feazell was unfit to fly the airplane. We will address these contentions in turn.

According to plaintiff, the aircraft in question was defective because it was not pressurized and it did not have a portable or permanent oxygen system on board. However, this aircraft can be safely operated at a wide range of altitudes. Here, the

record reveals Feazell could have chosen to fly on a route where oxygen was not required. In fact, the accident occurred at an altitude at which the FAA does not even require the use of oxygen. *See, e.g.*, 14 C.F.R. § 91.211 (1997). With the record before us, we cannot conclude the airplane was defective merely because it lacked an oxygen system.

Plaintiff also maintains San Juan knew or should have known Feazell was unfit to pilot the plane because Feazell regularly failed to follow procedures and was fatigued. The record reveals pilot Feazell made numerous errors prior to the fatal flight. He did not file a flight plan, failed to initiate flight following, and did not monitor the airplane's altitude relative to the surrounding terrain. While this may demonstrate negligence on Feazell's part, we can find no evidence in the record San Juan knew or should have known Feazell would have made these errors. At most, the record demonstrates San Juan knew Feazell had a habit of "borrowing" aircraft without signing the aircraft out; thus, San Juan could not appropriately track airplane hours for billing purposes. Such evidence is not probative of the issues in this case.

## C. Evidentiary Rulings

Finally, Mrs. Almegard asserts the district court erred when it struck numerous affidavits and exhibits from her opposition to the Mesa summary judgment. Because we

believe the district court correctly entered Mesa's summary judgment even assuming all of the evidence was not stricken, we need not assess the admissibility of this evidence.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge