SHAHOOD, J.
Appellants, Joseph Splaine[1] and Robin Splaine, appeal from summary judgment entered in favor of the City of West Palm Beach and Tower Systems South, Inc. f/k/a Casey’s Tower Service (“Tower Systems”) [2]. We disagree with the trial court’s determination that appellants’ claim against Tower Systems was barred by workers’ compensation statute 440.11 and reverse summary judgment as to Tower Systems. We affirm summary judgment in favor of the City of West Palm Beach in light of this court’s affirmance in DeRosa v. City of West Palm Beach, 758 So.2d 684 (Fla. 4th DCA 2000).
On October 14, 1994, independent contractor Tower Systems was hired by the City of West Palm Beach to remove or re-guy a 100-foot communications tower located on top of the West Palm Beach City Complex-Radio Communications Building. Tower Systems’ employees Joseph Splaine and William DeRosa were injured when the tower in which they were working on fell over causing the men to fall to the ground.
The city-owned tower was built in 1966 and moved from another location to the communications building in 1977. The tower was affixed by means of guy wires attached to four eye bolts anchored to the *1185 roof. Each eye bolt held several guy wires attached to the tower at varying heights.
In September 1994, Vaughn Simon, the City’s telecommunications superintendent, inspected the tower to install an antenna and observed rust on the anchor bolts, guy wires, and on the tower. Simon contacted Tower Systems to obtain a quote to re-guy or remove the tower, but could get a quote only to remove the tower. Simon spoke with Tower Systems’ supervisor and operations manager and advised them about the rust on the eye bolts'and of his concerns regarding the potentially dangerous condition of the tower. Tower Systems quoted the City $1,000 for the removal of the tower and specifically stated that the “Tower must be deemed climbable by crew. Tower stacked on site.”
According to Tower Systems’ operation manager (Meeks) it was the crew leader’s (Horchler) responsibility to determine if the tower was climbable and the crew leader’s and lead climber’s (DeRosa) responsibility to ensure the crew’s safety. Prior to the accident, Horchler, the crew supervisor, visually inspected the tower, tugged on the bolts and deemed it climbable. Other than a visual inspection, Tower Systems had no other established procedures to determine whether a tower was safe to climb. Lead climber DeRosa and Splaine climbed the tower. When Splaine disengaged a guy wire, the bolts anchoring the tower snapped, causing the tower to fall to the ground, injuring both men.
Approximately nine months prior to the accident, Tower Systems had been cited by OSHA for various violations when another worker fell to his death from a tower. OSHA took action against Tower Systems and required that it maintain a safety program which provided for frequent and regular inspections of jobsites, for a competent person to predict hazardous conditions to employees and that employees be trained to identify and avoid unsafe eondi-tions. In a letter to OSHA after the Splaine accident, Tower Systems’ President Carolyn Douglas indicated that they would expand their pre-inspection checklist and stated that “in the future, our company will not entertain the dismantling or removal of any structures unless they can be dropped or a tower inspection is accomplished by a licensed Florida engineer.” Notwithstanding such statement by Tower Systems’ President, in his deposition, Tower Systems’ general manager C.M. Cordrey, disagreed that in hindsight, the better practice in this case would have been to have had the tower inspected by a licensed Florida engineer prior to undertaking the job.
Following the accident, the Splaines filed a complaint for damages against the City of West Palm Beach[3] for negligent maintenance and inspection' of the tower and failure to provide adequate safety warning of hazardous conditions to licensees and against Tower Systems for negligently inspecting and dismantling the rusted tower in violation of OSHA requirements. Appellants claimed that Splaine had no experience climbing towers and had been hired by Tower Systems in June 1994 for ground work only. They alleged that Tower Systems knew or should have known that the tower had not been maintained and should not have instructed Splaine to climb the tower without knowing the extent of the rust on the bolts and anchor plates. The Splaines claimed that Tower Systems failed to warn Splaine of the risk involved in dismantling the rusted tower or of the results of. its inadequate inspection of the tower and that such intentional actions were willful and wanton or grossly negligent.
Both the City and Tower Systems denied any negligence on their part and alleged various affirmative defenses, including workers’ compensation immunity. The City cross-claimed against Tower Systems *1186 and both defendants moved for summary judgment. Summary judgment was granted as to both defendants.
At the summary judgment hearing, Tower Systems argued that under section 440.11, Florida Statutes, Tower Systems was entitled to summary judgment under the workers’ compensation statutes. They argued that once an employer has paid workers’ compensation benefits, an employee can proceed against an employer in a court of law, only if .he can submit competent substantial evidence of an intentional tort on the part of the employer. In its motion for summary judgment, Tower Systems claimed that it paid workers’ compensation benefits and provided full medical treatment to both Splaine and DeRosa as a result of the accident. Additionally, both injured men received a lump sum payment for future workers’ compensation benefits.
Tower Systems claimed that Splaine’s allegations amounted to no more than negligence or gross negligence on Tower Systems’ part. For purposes of the summary judgment hearing, Tower Systems admitted that it was negligent and should have done a more in depth inspection, but that such negligence did not amount to criminal misconduct.
Splaine argued that Tower Systems had previously been cited twice by OSHA for violations which resulted in the death of workmen and failed to obtain engineering surveys in order to ensure the safety in dismantling a tower. Thus, by ignoring OSHA’s previous directives for proper safety in dismantling towers, Tower Systems intentionally acted in a manner reasonably certain to cause serious injury. Instead, Tower Systems’s inspection consisted only of a visual inspection.
In finding in favor of Tower Systems, the trial court held that the “facts when reviewed in a light most favorable to Plaintiff indicate clear negligence on the part of [Tower Systems] but the negligence is not as flagrant or great as for e.g. in Connelly v. Arroto Air, Inc., 56[8] So.2d 448 ([Fla.] 3d DCA 1990). Therefore], these employees’ claims are barred by the workmen compensation law.”
Florida’s Workers’ Compensation Law, codified in chapter 440, Florida Statutes (1993), protects workers and compensates them for injuries occurring in the workplace, without examination of fault in the causation of injury. See Turner v. PCR, Inc., 754 So.2d 683, 686 (Fla.2000). Section 440.11 protects employers from liability beyond the benefits of workers’ compensation for injuries except in certain limited situations. See id. Generally, intentional acts or torts are not included in the scope of the workers’ compensation statute. See Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882 (Fla.1986), receded from in part by Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000). However, courts recognize*an exception for intentional torts where an employer has either exhibited a deliberate intent to injure or engaged in conduct which is substantially certain to result in injury or death. See Eller v. Shova, 630 So.2d 537, 539 (Fla. 1993); Fisher, 498 So.2d at 883.
In Turner, the Florida Supreme Court reaffirmed the existence of an intentional tort exception to an employer’s immunity. 754 So.2d at 687. In that case, the court reversed a summary judgment granting workers’ compensation immunity and stated that the “intentional tort exception includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury.” Id. at 691. “This standard imputes intent upon employers in circumstances where injury or death is objectively ‘substantially certain’ to occur.” See id. “To hold otherwise would virtually encourage a practice of ‘willful blindness’ on the part of employers who could ignore conditions that under an objective test would be found to be dangerous, and later claim lack of subjective knowledge or intent to harm an employee.” See id.
Under the facts of Turner, the decedent, a PCR technician at a chemical plant, was *1187 killed in an explosion. PCR was under contract to research and develop a replacement for a coolant. This required the technician to handle chemicals that were highly reactive and prone to spontaneous and violent decomposition when heated. This information was not provided to employees. Appellants presented evidence of three other uncontrolled explosions in order to support their claim that PCR knew of the high risk of injury or death at the time of the incident in question. Evidently, these dangerous chemicals were placed in an unsafe tank which did not contain a pressure relief valve, cooling capability and other safety features to withstand a chemical reaction. The trial court granted summary judgment finding that the appellants’ affidavits amounted to conclusory allegations rather than evidence of facts. .754 So.2d at 685. The First District affirmed finding that it was undisputed that no explosion had ever occurred involving the same combination of chemicals under the same conditions as in that particular case and that the experts’ opinions were insufficient to create material issues of fact. See id. at 685-86.
In reversing, the Florida Supreme Court utilized an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury and held that genuine issues of material fact existed which precluded summary judgment. The court noted that the complaint in Turner alleged that PCR intentionally engaged in conduct that was substantially certain to result in injury or death and that it failed to protect its employees from a known danger of explosion. See id. at 689-90. More importantly, the appellants supported their allegations of PCR’s knowledge of the danger with affidavits from two expert chemists and evidence of at least three other uncontrolled explosions. See id. at 690.
The Turner court held that the alleged conduct, if proven, was at least as egregious as the conduct exhibited in Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 8d DCA 1990), review denied, 581 So.2d 1307 (Fla.1991), and Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA), review denied, 574 So.2d 139 (Fla. 1990).
In Connelly, the widow of an airline copilot Wiled in the course of his employment brought a wrongful death action against the employer, alleging that the employer’s conduct amounted to an intentional tort. In that case, there was evidence that the airplane was routinely overloaded and poorly maintained with known mechanical deficiencies. See 568 So.2d at 450. Problems with different parts of the aircraft were ignored and other malfunctioning items were reported only on in-bound trips to eliminate costly non-base repair expenses. See id. at 449-50. Based on this evidence, the court found that the employer’s conduct was substantially certain to cause serious injury or death. See id. at 450. Further, the court also found that where an employer “withholds from an employee knowledge of a defect or hazard which poses a grave threat of injury ... the employer will be considered to have acted in a ‘belief that the harm is substantially certain to occur.’ ” Id. at 451.
In Cunningham, the employees filed a joint complaint against the employer for injuries suffered from exposure to toxic substances resulting from the intentional conduct of their employer. Specifically, they alleged that the employer removed warning labels on toxic substance containers, misrepresented the toxic nature of the substances, and knowingly provided inadequate safety equipment. See 558 So.2d at 97. The complaint further alleged that the employer diverted a smokestack, resulting in fumes flowing into rather than outside of the plant, and that the employer periodically turned off the plant ventilation system thereby intensifying the level of exposure. See id. at 96. Based on these allegations, the court reversed the summary judgment and found that the employer’s actions *1188 were substantially certain to result in injury or death to the employees. See id. at 97.
As in Connelly, there is evidence here that PCR knew of the highly explosive nature of TPE and the reactants, yet failed to disclose this to its employees. Further, as in Connelly, there is evidence here that by putting the concern for profits first, PCR ignored the safety risks and attempted to meet Dupont’s demands by using an unsuited existing reaction facility that lacked the proper safety instruments. In fact, this case is arguably more egregious than Connelly and Cunningham in that PCR knew of prior similar explosions with the same and similar chemicals involved in the explosion at issue here, yet chose to ignore them. Connelly and Cunningham also share a common thread of evidence that the employer tried to cover up the danger, affording the employees no means to make a reasonable decision as to their actions. See Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995). Similarly, there are allegations in this case that PCR did not disclose the extent of the danger created by TFE of which ICI had informed PCR in writing.
Id. at 690-91.
As in Turner, in this case, Splaine alleged that Tower Systems’ intentional and willful and wanton acts were the proximate cause of his injuries. Tower Systems did not have any safety manuals or procedures in place to assist them in determining whether a tower was deemed elimbable and failed to test or inspect the tower given the extent of the rust on the tower. Instead, only a visual inspection was performed. Further, Splaine alleged that they ignored OSHA’s requirements that an engineering survey be conducted to determine whether the structure would support the additional weight and they failed to change their procedures despite the death of an employee and previous OSHA citations. Splaine claimed that Tower Systems failed to warn him of the high risk involved in dismantling such an eroded tower, especially when he had never climbed a tower. In their motion in opposition to Tower Systems’ motion for summary judgment, the Splaines claimed that OSHA’s report of the accident indicated that Tower Systems’ inspection was faulty and done without any regard to the adequacy of the tower to support a line load which would impact the structure and that the excessive rusting should have made them take precautions in order to properly plan to dismantle the tower.
These allegations were supported by testimony from Vaughn Simon, the City’s telecommunications superintendent, regarding the extensive rust on the tower and his concern that it posed a potential hazard. In fact, the company was aware that the tower either had to be removed or re-guyed and specifically reserved the right to determine whether the tower was in fact elimbable. Evidence was presented from Tower Systems’ managers that it was the company’s customary procedure to conduct only a visual inspection, that they had never engaged an engineer despite OSHA’s citations, that they had no specific written safety procedures, only on the job training, and that it was doubtful that they would change their procedures. Further, information concerning the deterioration of the tower, the risk involved, and prior OSHA violations were never conveyed to Splaine.
While Tower Systems’ conduct may not have been as egregious as the employer’s conduct in Turner, we hold that as in Turner, there exist genuine issues of fact which should have precluded the entry of summary judgment.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
GUNTHER and GROSS, JJ., concur.

. Appellant, Joseph Splaine, passed away during the pendency of this appeal and Robin Splaine as sole surviving spouse was substituted as the real party in interest for Joseph Splaine.

. Appellee, Tower Systems, failed to timely file its Answer Brief, and thus, did not participate in oral argument.

. Appellants also joined Transi-Tronics, Inc. and Ellis Tower Co., Inc. as defendants for their negligent assembly and installation of the tower. These defendants are not part of this appeal.