754 So.2d 683 (2000)
Debra Ann TURNER, James Creighton and Lynn Creighton, Petitioners,
v.
PCR, INC., Respondent.
No. SC94468.
Supreme Court of Florida.
March 2, 2000.
*684 Karen B. Cohen of Green, Kahn & Piotrkowski, P.A., Miami, Florida, and Jack J. Fine of Fine, Farkash & Parlapiano, Gainesville, Florida, for Petitioners.
Michael D. Whalen of Martin, Ade, Birchfield & Mickler, P.A., Jacksonville, Florida, for Respondent.
ANSTEAD, J.
We have for review a decision ruling on the following question certified to be of great public importance:

IS AN EXPERT'S AFFIDAVIT, EXPRESSING THE OPINION THAT AN EMPLOYER EXHIBITED A DELIBERATE INTENT TO INJURE OR ENGAGED IN CONDUCT SUBSTANTIALLY CERTAIN TO RESULT IN INJURY OR DEATH TO AN EMPLOYEE, SUFFICIENT TO CONSTITUTE A FACTUAL DISPUTE, THUS PRECLUDING SUMMARY JUDGMENT ON THE ISSUE OF WORKERS' COMPENSATION IMMUNITY?
Turner v. PCR, Inc., 732 So.2d 342, 344 (Fla. 1st DCA 1998). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Upon review, we conclude that in order to determine whether the experts' affidavits preclude the entry of a summary judgment, we must first decide what a claimant-employee must show when attempting to prove the commission of an intentional tort by an employer in order to avoid an otherwise valid workers' compensation defense. While we decline to address the certified question, we accept jurisdiction and quash the district court decision. In so doing, we recognize and reaffirm the existence of an intentional tort exception to an employer's immunity, and hold that the conduct of the employer must be evaluated under an objective standard.

PROCEEDINGS TO DATE
Debra Ann Turner, as the personal representative of the estate of Paul Turner, brought a wrongful death action against PCR, Inc., alleging that PCR caused the death of her husband Paul. This action was joined with a personal injury action brought by James and Lynn Creighton. PCR claimed immunity as an employer of Paul Turner and James Creighton, and alleged that Turner and the Creightons were only entitled to workers' compensation benefits. This case is before us based on the district court's approval of a summary judgment in favor of PCR, on its workers' compensation defense.
Upon review of the entry of a summary judgment, an appellate court must review the record and any supporting affidavits in the light most favorable to the non-moving party. See Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995). Accordingly, we consider the record and supporting affidavits in this case viewed in the light most favorable to appellants.[1]
On November 22, 1991, an explosion at the PCR chemical plant in Alachua County killed Paul Turner and seriously injured James Creighton, both PCR technicians. At the time, PCR was under contract with DuPont to research and develop replacements for the coolant; Freon 113. A compound designated as F-pentene-2 was among the replacement compounds PCR was developing and was the compound involved in the explosion. F-pentene-2 is produced by combining tetrafluoroethylene (TFE) with hexafluoropropene (HFP), in the presence of aluminum chloride (a "promoter"), and heat from the resulting pressure.
TFE's explosive force is equal to two-thirds that of TNT, and the risk of an explosion by using TFE in the production *685 of F-pentene-2 is very high. Appellants' experts, Dr. John Landrum and Mr. Jack Brand, opined that TFE is "highly reactive," "prone to spontaneous and violent decomposition when heated or compressed," and must be handled with extreme care involving special equipment and precautions. In fact, ICI, the company that manufactures TFE, notified PCR in April 1991, that it was planning to discontinue supplying TFE throughout the United States because of its hazardous character. PCR allegedly did not provide this information to its employees, including Turner and Creighton.
Prior to the November 22 incident, PCR made thirty-six runs of the F-pentene-2 process: three one-gallon runs, two five-gallon runs, twenty-five twenty-gallon runs and six 200-gallon runs. The explosion at issue in this case occurred during the seventh 200-gallon run. Appellants presented evidence of "at least three" other uncontrolled explosions at PCR in just under two years to support their claim that PCR knew of a high risk of injury or death on November 22. The first explosion, on October 27, 1988, involved a compound similar in structure and composition to TFE. The second explosion, on August 3, 1989, occurred when TFE was mixed with hydrofluorocarbons during another experiment for DuPont. The third explosion, on July 20, 1990, occurred when HFP reacted with aluminum chloride during PCR's first attempt to produce F-pentene-2. This third uncontrolled explosion reached a temperature of 962 C, and a pressure greater than 1300 psi, melting the internal metal parts of the reactor.
The November 22 explosion occurred upon the mixing of TFE, HFP and aluminum chloride in a 100-pound liquid fuel cylinder lacking any pressure relief device. The combination of the chemicals in this vessel resulted from the attempt to use crude F-pentene-2 as a solvent to slurry transfer the solid aluminum chloride into a 200-gallon reactor which was not equipped with a solid additions port as was present in the smaller reactors used in the earlier stages of the project. According to Landrum, the absence of a solid additions port made the reactor unsuited for use with a solid catalyst such as aluminum chloride, the same catalyst required for this synthesis. This method of introducing the solid aluminum chloride required that it be loaded into the 100-pound liquid petroleum cylinder, producing a suspension of aluminum chloride which could be transferred under pressure through a hose to the reactor by inverting the cylinder. Landrum opined that this process is fundamentally unsafe, posing risk of rupture of the cylinder due to application of excessive nitrogen gas.
Brand also opined that there was a substantial certainty that placing large quantities of these dangerous substances in a primitive propane tank rather than in a reactor designed with pressure release valves, external cooling capability, temperature monitoring capability, and other safety features to withstand a violent chemical reaction, and then manually inverting this tank rather than remotely activating it, would result in an explosion. Both Landrum and Brand concluded that apparently because of the intense pressure placed on PCR as a result of the fast-approaching phase-out date for the legal use and manufacture of Freon and the need for a substitute, PCR modified the proper protocol for the synthesis of F-pentene-2 to accommodate an existing reaction facility that was unsuited and unsafe for the purpose.
Despite these factual assertions, the trial court granted PCR's motion for summary judgment, finding that plaintiffs had failed to establish a factual basis for the claim that defendant intentionally injured them or engaged in acts which were substantially certain to cause them injury or death. Specifically, the trial court found that plaintiffs' affidavits amounted to conclusory allegations rather than evidence of facts. The First District affirmed, finding critical the fact that it was undisputed that *686 no explosion had ever occurred at PCR involving the same combination of chemicals under the same conditions as the fatal explosion at issue in this case. See Turner v. PCR., Inc., 732 So.2d 342, 343 (Fla. 1st DCA 1998). The court found the experts' opinions insufficient to create a material issue of fact. See id. at 344. Notwithstanding, the court certified the above stated question as one of great public importance.

WORKER'S COMPENSATION
Florida's Worker's Compensation law is codified in chapter 440, Florida Statutes (1997). The statute is intended to provide a "quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." § 440.015, Fla. Stat. (1997).[2] To that end, "[t]he workers' compensation system ... is based on a mutual renunciation of common-law rights and defenses by employers and employees alike... [and] the facts in a workers' compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer." Id. Essentially, under this no-fault system, the employee gives up a right to a common-law action for negligence in exchange for strict liability and the rapid recovery of benefits. See United Parcel Service v. Welsh, 659 So.2d 1234, 1235 (Fla. 5th DCA 1995); 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation § 65.10 (Desk ed.1999). For employees within the statute's reach, workers' compensation is the exclusive remedy for "accidental injury or death arising out of work performed in the course and the scope of employment." § 440.09(1), Fla. Stat. (1997); see also § 440.11, Fla. Stat. (1997). While providing employees with benefits on a no-fault basis, the flip side of this scheme is its provision for immunity from common-law negligence suits for employers covered by the statute. At the same time, however, the statutory scheme itself explicitly recognizes the liability of co-employees to injured employees under certain limited conditions, including intentional or reckless actions. See § 440.11(1), Fla. Stat. (1997).

EXCEPTIONS TO IMMUNITY
Notwithstanding the general recognition of tort immunity for employers, this Court has recognized an intentional tort exception to the worker's compensation statutory scheme. See Eller v. Shova, 630 So.2d 537, 539 (Fla.1993) (stating that "employers are provided with immunity from suit by their employees so long as the employer has not engaged in any intentional act designed to result in or that is substantially certain to result in injury or death to the employee") (citing Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882 (Fla.1986) and Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879 (Fla. 1986)). In Eller, we upheld the constitutionality of legislation that limited an employee's actions against managerial or policy-making coemployees to ones alleging intentional injury or injury by culpable *687 negligence.[3] Today we reaffirm our prior decisions recognizing, as have our district courts and many jurisdictions around the country, that workers' compensation law does not protect an employer from liability for an intentional tort against an employee. See, e.g., Cunningham v. Anchor Hocking Corp., 558 So.2d 93, 97 (Fla. 1st DCA 1990); Clark v. Gumby's Pizza Systems, Inc., 674 So.2d 902, 904 (Fla. 1st DCA 1996); see also Larson & Larson, supra, §§ 68.11-68.15.

FISHER AND LAWTON

In 1986 the two cases cited by the court in Eller came before this Court as certified questions. The certified question in each of those cases was: "Does the Florida Workers' Compensation Law preclude actions by employees against their corporate employers for intentional torts even though the injuries were incurred within the scope of their employment?" Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882, 882-83 (Fla.1986); Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879, 880 (Fla.1986). In both of these cases, we declined to explicitly answer the certified question of whether an intentional tort was a valid exception to the workers' compensation immunity. Instead, in both cases, we found that the complaint filed on behalf of the employees only spoke in terms of probable injury, and because a "strong probability" is different than a "substantial certainty," we held that the complaints failed to allege a prima facie case of intentional tort. Therefore, we upheld the judgments rendered for the employers in both cases by a four-to-three vote, with Justice Adkins dissenting in an opinion concurred in by Justices Shaw and Barkett. See Fisher, 498 So.2d at 884; Lawton, 498 So.2d at 881. In each case, a minority of the justices, three, dissented, and indicated they would have answered the certified question in the affirmative and would also have held that both cases presented jury issues as to whether an intentional tort could be proven. The minority agreed, however, with the majority's requirement of a substantial certainty of injury as a necessary component of proving an intentional tort.
Notwithstanding our determination that the employees in Fisher and Lawton had not properly alleged the heightened degree of certainty to constitute an intentional tort, we held in those cases that in order to prove an intentional tort, the employer must be shown to have either "exhibite[d] a deliberate intent to injure or engage[d] in conduct which is substantially certain to result in injury or death." Fisher at 883 (emphasis added). Hence, we recognized the existence of two alternative bases for an employee to prove an intentional tort action against an employer. Subsequently, in Eller, we acknowledged that an employer enjoyed no immunity from an employee's action based upon an intentional tort as defined in Fisher and Lawton. We reaffirm that holding today.[4]

*688 OBJECTIVE vs. SUBJECTIVE STANDARD
In the present case, the appellants specifically concede that PCR did not act with deliberate malice toward them. Therefore, the first part of the disjunctive test announced in Fisher, which focuses on whether an employer deliberately intended to injure an employee, is not at issue. Instead, appellants assert that under the second part of the Fisher test, PCR intentionally created a situation where injury or death was a substantial certainty.
Having clarified and reaffirmed our holdings in Fisher, Lawton, and Eller, we still must examine the proper standard courts should use to apply the second part of the disjunctive test referred to in those cases in order to determine whether an employer has committed an intentional tort against an employee. In other words, we consider whether, under that second alternative, an employee must establish that the employer actually knew (subjective standard) or rather the employer should have known (objective standard) that the conduct complained of was "substantially certain to result in injury or death."
Under an objective test for the substantial certainty standard, an analysis of the circumstances in a case would be required to determine whether a reasonable person would understand that the employer's conduct was "substantially certain" to result in injury or death to the employee. Under this approach, the employer's actual intent is not controlling. On the other hand, a subjective approach essentially requires a determination as to whether an employer actually knew or intended the consequences of its conduct. Under this approach, there would actually be no alternative basis for recovery against an employer. Rather, an employee would be limited to actions where the employer engaged in conduct that the employer actually knew would be harmful to the employee.
In fact, some courts have read the second part of the Fisher test to require the element of intent to cause harm, thus restricting the test to "true intent" rather than objective evaluations of the circumstances. See, e.g., Welsh, 659 So.2d at 1236 (holding that, to survive a motion for summary judgment, a complaint sounding in intentional tort must allege that the employer knew that injury or death was a virtual certainty); Thompson v. Coker Fuel, Inc., 659 So.2d 1128, 1130 (Fla. 2d DCA 1995) (finding that the employee's death was not "the expected or intended result" of the procedure that killed him). As noted above, this subjective evaluation appears identical to the first part of the disjunctive test adopted in Fisher, i.e., a deliberate intent to injure.
The second part of the alternative test in Fisher comes from Spivey v. Battaglia, 258 So.2d 815 (Fla.1972), in which this Court cited the Second Restatement of Torts for the proposition that "[w]here a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it." Spivey, 258 So.2d at 817. Hence, it is apparent that an objective test was contemplated in Spivey. Further, although the "substantial certainty" test has been *689 harshly criticized, it appears that these same critics agree that those jurisdictions which have adopted it should interpret it using an objective standard. See, e.g., Larson & Larson, supra, § 68.15(c) ("The only reason for adopting [the substantial certainty test] would be to substitute a measure of objectivity for the subjectivity of `intention.' The trouble with this is that this quest for objectivity succeeds only to the degree that the component of the employer's belief is downplayed.") (emphasis added). Because it is apparent that adoption of a subjective analysis would result in the virtual elimination of the alternative test for liability set out in Fisher,[5] we conclude that adoption of an objective standard is more in accord with the policy of the alternative test we adopted in Fisher.
We also note, as did Justice Adkins' dissent in Fisher,[6] that section 440.09(1), Florida Statutes (1991) provides compensation for injury by accident: "Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury arising out of and in the course of employment." Injury is defined in section 440.02(17), Florida Statutes (1991) as "personal injury or death by accident arising out of and in the course of employment." Accident is further defined in section 440.02(1), Florida Statutes (1991) as "only an unexpected or unusual event or result, happening suddenly." Conversely, therefore, under the plain language of the statute, it would appear logical to conclude that if a circumstance is substantially certain to produce injury or death, it cannot reasonably be said that the result is "unexpected" or "unusual," and thus such an event should not be covered under workers' compensation immunity.
Similarly, since the workers' compensation scheme is not intended to insulate employers from liability for intentional torts, and is not to be construed in favor of either the employer or the employee, workers compensation should not affect the pleading or proof of an intentional tort. Therefore, an employee-plaintiff should not be held to a higher standard than any other plaintiff in a non-work-related intentional tort case. Indeed, the plain language of section 440.015, Florida Statutes (1997), suggests that the Legislature did not intend workers' compensation immunity to be used to create a shield for employers to block intentional tort suits at the summary judgment phase. See Schwartz v. Zippy Mart Inc., 470 So.2d 720, 725 (Wentworth, J., specially concurring) ("I perceive no legislative intent to shield employers, individual or corporate, from direct civil liability for intentional torts or actions based on employer conduct which might inferentially support a finding of willful intent.").

THIS CASE
Applying an objective approach to determine whether it was substantially certain that the employee would suffer injury or death, we find the proof, including the expert affidavits, submitted in the present case sufficient to raise genuine issues of material fact and thereby effectively preclude the entry of a summary judgment.
First, we note that unlike the complaint in Fisher, Turner's complaint alleges that PCR intentionally engaged in conduct that was substantially certain to result in injury or death. It specifically states that "PCR, Inc. failed to protect its employees from a known danger of explosion and instead ... *690 engaged in conscious and intentional conduct which was substantially certain to result in injury or death." Hence, the flaw of pleading only a "probability" that existed in Fisher does not exist here.[7]
Second, and more importantly, in response to PCR's motion for summary judgment, appellants supported their allegations of PCR's knowledge with evidence, including affidavits from two expert chemists, supporting the existence of a serious risk of danger, including evidence of at least three other uncontrolled explosions at PCR in just under two years. The affidavits are based upon personal knowledge, they set forth facts that would be admissible as evidence, and they show affirmatively that the affiants are competent to testify as to the matter in the affidavit in accordance with Florida Rule of Civil Procedure 1.510(c) and (e). Both experts concluded that PCR attempted to modify the proper process used to produce F-pentene-2 and, as a result, used an existing reaction facility which they knew was unsuited for the purposes. They further concluded that this intentional conduct on behalf of PCR, given its knowledge of TFE's explosiveness, made Turner's death and Creighton's injury substantially certain to occur. Brand's affidavit also contains evidence that the chief technician involved in this experiment was convinced that the explosion was imminent.
The alleged conduct in this case, if proven, is at least as disturbing as the conduct exhibited by the employers in Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), and Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990). In Connelly, the widow of an airline copilot killed in the course of his employment, brought a wrongful death action against the employer, alleging that the employer's conduct amounted to an intentional tort. In that case, there was evidence that the airplane was routinely overloaded and poorly maintained with known mechanical deficiencies. See 568 So.2d at 450. Problems with different parts of the aircraft were ignored and other malfunctioning items were reported only on inbound trips to eliminate costly non-base repair expenses. See id. at 449-50. Based on this evidence, the court found that the employer's conduct was substantially certain to cause serious injury or death. See id. at 450. Further, the court also found that where an employer "withholds from an employee knowledge of a defect or hazard which poses a grave threat of injury ... the employer will be considered to have acted in a `belief that the harm is substantially certain to occur.'" Id. at 451.
In Cunningham, the employees filed a joint complaint against the employer for injuries suffered from exposure to toxic substances resulting from the intentional conduct of their employer. Specifically, they alleged that the employer removed warning labels on toxic substance containers, misrepresented the toxic nature of the substances, and knowingly provided inadequate safety equipment. See 558 So.2d at 97. The complaint further alleged that the employer diverted a smokestack, resulting in fumes flowing into rather than outside of the plant, and that the employer periodically turned off the plant ventilation system thereby intensifying the level of exposure. See id. at 96. Based on these allegations, the court reversed the summary judgment and found that the employer's actions were substantially certain *691 to result in injury or death to the employees. See id. at 97.
As in Connelly, there is evidence here that PCR knew of the highly explosive nature of TFE and the reactants, yet failed to disclose this to its employees. Further, as in Connelly, there is evidence here that by putting the concern for profits first, PCR ignored the safety risks and attempted to meet Dupont's demands by using an unsuited existing reaction facility that lacked the proper safety instruments. In fact, this case is arguably more egregious than Connelly and Cunningham in that PCR knew of prior similar explosions with the same and similar chemicals involved in the explosion at issue here, yet chose to ignore them. Connelly and Cunningham also share a common thread of evidence that the employer tried to cover up the danger, affording the employees no means to make a reasonable decision as to their actions. See Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995). Similarly, there are allegations in this case that PCR did not disclose the extent of the danger created by TFE of which ICI had informed PCR in writing.[8]

CONCLUSION
In summary, we find that our prior case law recognizes, and we reaffirm, the existence of an intentional tort exception to an employer's immunity. That intentional tort exception includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury. This standard imputes intent upon employers in circumstances where injury or death is objectively "substantially certain" to occur. To hold otherwise would virtually encourage a practice of "willful blindness" on the part of employers who could ignore conditions that under an objective test would be found to be dangerous, and later claim lack of subjective knowledge or intent to harm an employee. This holding is also consistent with legislative policy recognizing the liability of managerial or policy-making coemployees for conduct constituting reckless indifference to the safety of other employees.
Applying this objective standard to the experts' affidavits and other proof submitted here, we find there is a genuine issue of fact. Of course, the appellants retain the ultimate burden of demonstrating to a fact-finder that PCR engaged in conduct that was substantially certain to result in injury. For the foregoing reasons, we find that summary judgment was erroneously granted. Accordingly, we quash the decision below and remand for further proceedings consistent with this opinion.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] We present the facts with some trepidation as to our ability to restate them with technical accuracy.
[2] Section 440.015, Florida Statutes, provides in part:

It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer.... In addition, it is the intent of the Legislature that the facts in a workers' compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer. Additionally, the Legislature hereby declares that disputes concerning the facts in workers' compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand, and the laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer. It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker.
[3] We defined culpable negligence as follows:

Culpable negligence has been defined through case law as "reckless indifference" or "grossly careless disregard" of human life. Gross negligence, on the other hand, is defined as an act or omission that a reasonable, prudent person would know is likely to result in injury to another.
630 So.2d at 541 n. 3 (citations omitted).
[4] We recognize that some courts have elevated the standard employees must prove from "substantial certainty" to "virtual certainty." See e.g., Clark v. Gumby's Pizza Systems, Inc., 674 So.2d 902, 903 (Fla. 1st DCA 1996) (stating that if true the facts alleged would be insufficient to establish that employer's conduct was "virtually certain" to result in injury to employee); United Parcel Service v. Welsh, 659 So.2d 1234, 1236 (Fla. 5th DCA 1995) (stating that plaintiff's complaint did not allege any ultimate facts to establish that injury or death was a "virtual certainty"); Kenann & Sons Demolition, Inc. v. DiPaolo, 653 So.2d 1130, 1131 (Fla. 4th DCA 1995) (same). Although we continue to find that "substantial certainty" requires a showing greater than "gross negligence," we emphasize that the appropriate standard is "substantial certainty," not the heightened "virtual certainty" standard. See, e.g., Gustafson's Dairy, Inc. v. Phiel, 681 So.2d 786, 790 (Fla. 1st DCA 1996) (applying "substantial certainty" standard to determine whether employer acted intentionally); Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290, 1291 (Fla. 5th DCA 1995) (same). As noted earlier, we upheld legislation in Eller that created an exception to a managerial coemployee's immunity when the coemployee acted with culpable negligence. That culpable negligence exception is not unlike the "substantial certainty of injury" exception we recognized in Fisher and Lawton. Although in Fisher and Lawton we announced the "substantial certainty" standard, we also spoke in terms of "virtual certainty." See Fisher at 884 (stating that "the complaint involved here does not allege such `virtual certainty'"); Lawton at 880 (stating that the standard to constitute an intentional tort requires "virtual certainty" on the point of the employer). However, we recede from any language in Fisher or Lawton suggesting the "substantial certainty" test requires a showing of "virtual certainty."
[5] Even the Legislature, in restricting the liability of managerial coemployees has not gone this far. Rather, as we noted in Eller, the Legislature limited such liability to intentional acts or acts of culpable negligence where the coemployee displays a "reckless indifference" to the safety of the injured employee.
[6] Justice Adkins considered the 1983 version of the statute. The relevant language is identical in the 1991 statute, which governs this case.
[7] Moreover, Turner's complaint alleges that PCR designed an extremely dangerous system of transferring contents of a 100-pound cylinder to a 200-gallon reaction vessel which it knew exceeded its capacity. It further alleges that despite such knowledge, the defendant intentionally concealed from its employees these dangers, did not make safety equipment available, provided inadequate safety equipment to its employees, failed to instruct its employees on appropriate and proper safety procedures, and intentionally subjected the plaintiff to a known dangerous condition which was substantially certain to result in injury or death.
[8] We also acknowledge that the facts as described in the opinions in Fisher and Lawton appear to be at least as egregious as the facts alleged herein and in Connelly and Cunningham. While Fisher and Lawton can perhaps be distinguished from these cases because of the insufficiency of the allegations of probable injury, we nevertheless recede from Fisher and Lawton to the extent those cases can be read as rejecting the facts as stated therein as a sufficient basis to support an allegation of substantial certainty of injury.