CROW, DAVID F., Associate Judge.
Appellant, Griffin Brothers Company, Inc. (“Griffin”), timely appealed the granting of a final summary judgment on its Third Party Complaint in favor of Appel-lee, Villari and Associates, Inc. (‘Villari”). For the reasons explained herein, we affirm the final summary judgment.
On July 20, 1992, Abraham Khan, Jr., an employee of Griffin, was killed when his vehicle overturned into a lake while he was performing within the scope and course of his employment with Griffin. In 1994, Doris Mohammed, individually and as Personal Representative of the Estate of her deceased son, Abraham Khan, filed a wrongful death action against Griffin. To avoid the exclusive remedy provisions of Florida Statutes Chapter '440 et seq., she alleged in part:
15. That it was usual policy ... for defendant ... to hire single males with no dependents, ... to work in hazardous activities, and order them to operate defective heavy duty vehicles ... without the requisite licensing, or training....
19. ... Griffin ... intentionally, willfully, wantonly, recklessly and with callous disregard for the health and safety of the victim ordered Mr. Khan to drive a dangerous instrumentality, a heavy duty (20 ton) dump trunk upon unsafe terrain. ... Griffin, knew that the victim did not have the required license, issued by the State of Florida to operate said vehicle ...
20. That defendant Griffin intentionally and willfully failed to comply with standard and required safety regulation ....
21. Defendant Griffin intentionally, willfully, wantonly and specifically directed its agents to place badly worn and/or bald tires on this and other off-road vehicles used at the job site....
22. [Defendant Griffin knew and encouraged improper maintenance of said vehicle driven by the victim as a cost saving measure for its business.
23. That defendant Griffin had knowledge of previous serious and fatal incidents involving its employees and unsafe vehicles and intentionally refused to comply with federal safety regulations despite prior ci *428 tation to repair said vehicles, and correct its conduct, and further intentionally failed to warn, instruct or advise the victim that he was being ordered to engage in conduct which was substantially certain to result in injury or death.
24. That defendant Griffin intentionally ... directed the victim without . warning, to perform a task and engage in' conduct that was substantially certain to result in serious injury or death....
26. Griffin intentionally failed to provide adequate safety measures....
27. That as a direct and proximate result of the intentional willful, wanton and reckless conduct of the defendant Griffin Brothers’ Co., Inc., said conduct that was substantially certain to result in injury or death, the plaintiff was deprived of her son, who suffered bodily injury, pain and suffering, loss of earnings and loss of the balance of his youthful life.
Prior to the incident, Transportation Casualty Insurance Company (“TCI”) had issued a Workers’ Compensation and Employers Liability Insurance Policy to Griffin Brothers. TCI defended Griffin in the wrongful death action under a reservation of rights, and filed a declaratory action against Griffin asserting that its policy did not provide coverage pursuant to an exclusion contained in Part II, Section C of the policy which provided in part:
PART TWO-EMPLOYERS LIABILITY INSURANCE
C. Exclusions
This insurance does not cover:
Bodily injury intentionally caused or aggravated by you;
Thereafter, Griffin filed an Amended Third Party Complaint against Villari, the licensed insurance agent who provided the TCI policy. In Count I, Griffin alleged that Villari breached its duty to obtain proper insurance for Griffin in that it obtained a policy which contained exclusions that exposed Griffin to liability. In Count II, Griffin alleged that it requested Villari to obtain an employer liability policy which would cover Griffin for “all liability” and “provide full liability coverage” with “no exceptions” and that Villari misrepresented such coverage had been obtained.
Ultimately, the wrongful death claim was settled with Griffin and TCI each paying one half of the settlement. The declaratory action under the TCI policy was dismissed with prejudice without any determination as to whether the wrongful death claim was covered. Thus, the only remaining claim was the third party claim by Griffin against Villari. Villari filed its Motion for Summary Judgment on the third party claim, which Motion was granted by the trial court. After rehearing was denied, the trial court entered Final Judgment in favor of Villari on June 29, 2004.
Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there are any remaining issues of fact, however, all inferences are viewed in favor of the non-moving party and the moving party must conclusively show that there is no genuine issue of material fact. Holl v. Talcott, 191 So.2d 40 (Fla.1966). If *429 the record raises the slightest doubt that an issue of material fact might exist, summary judgment is improper. Yzaguirre v. Progressive Am. Ins. Co., 793 So.2d 99 (Fla. 2d DCA2001).
The record reflects that Richard A. Griffin, Sr., president of Griffin for 46 years, had been in charge of insurance procurement and the insurance renewal process for approximately 20 years. Mr. Griffin’s standard procedure was to advertise the company’s insurance needs to various companies and then work with brokers or agents to purchase the coverages. Once coverage was obtained, the policies would be delivered to him and he would personally review each policy. Griffin thereafter retained physical possession of the policies.
Randall Warren was employed by Villari as the agent for the TCI policy. Mr. Griffin testified that he was repeatedly told by Mr. Warren that the company was 100% covered for liability and workers’ compensation and was told, “I have you covered on every single thing in liability and workmen’s comp.” Mr. Griffin testified, “I challenge my agent to sell me what I needed to give me 100 percent coverage and protection.” Nevertheless, Mr. Griffin admitted he never asked and was never told that the policy would cover Griffin for “intentional acts.” He also acknowledged that insurance companies are required to sell policies that conform to state law. Although he testified that he was knowledgeable about insurance matters and was familiar with exclusions in insurance policies, he admitted he did not know if an insurance company would issue a policy in this state that covered “intentional acts.” Likewise, he was unaware if there were any material differences between the TCI policy and any subsequent employers liability policies purchased by his company. He also could not state whether Griffin’s current policy contained an intentional acts exclusion.
Warren stated that Mr. Griffin did not ask him to procure a policy that would cover Griffin for its intentional acts, nor was he asked at any time prior to the incident whether such coverage was provided to Griffin. In fact, as a licensed insurance agent in Florida with approximately 15 years of experience, he had never seen such a policy and knew of no insurance company that would provide such coverage.
The Workers’ Compensation Employers Liability Insurance Policy issued by TCI is a dual coverage policy. Part I, Workers Compensation, provided coverage to Griffin for liability under the Workers’ Compensation Act (Florida Statute Chapter 440 et seq.) as a result of injuries to employees during their employment. Part II, Employer’s Liability Insurance, however, provided coverage to Griffin for injuries to employees during their employment under circumstances where Griffin would be obligated to pay damages other than the statutorily mandated workers’ compensation benefits. Obviously, the circumstances under which an employer may be liable to pay damages other than workers’ compensation benefits are severely limited because of the exclusive remedy provisions of Chapter 440. In essence, the Employer’s Liability Insurance provides “gap” insurance to the employer in situations where the employee may maintain a tort action against the employer despite the exclusive remedy provisions of the Workers’ Compensation Act. See, e.g., Travelers Indem. Co. v. PCR, Inc., 889 So.2d 779, 784 n. 7 (Fla.2004); see also Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co., 495 N.W.2d 723, 728-29 (Iowa 1993) (quoting 7B John Alan Appleman, Appleman, Insurance Law & Practice Section, § 4571 at 2 (Walter F. Berdal Ed., 1979)); Producers *430 Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal.3d 903, 226 Cal.Rptr. 558, 718 P.2d 920, 927 (1986).
As noted above, in order to avoid the exclusive remedy provisions of the Workers’ Compensation Act, the wrongful death complaint made various allegations in an attempt to fall under the “intentional tort exemption” to the workers’ compensation statutory scheme. See Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000); Eller v. Shova, 630 So.2d 537, 539 (Fla.1993). Florida has recognized the existence of two alternative bases to establish this “intentional tort exception” to the exclusive remedy provisions of the Workers’ Compensation Act. The employer must be shown to either have (1) exhibited a deliberate intent to injure or (2) engaged in conduct which is substantially certain to result in injury. Turner, 754 So.2d at 687.[1] In the present case, since the declaratory action was never decided, it is unclear whether the Plaintiffs allegations would fall under the first or second part of the above disjunctive test. However, as noted below, regardless of the theory under which Griffin was sued, the trial court was correct in granting summary judgment.
The first test annunciated in Turner focuses on whether the employer deliberately intended to injure the employee. If that is the basis of the original claim against Griffin, then the action is one predicated upon a true “intentional act,” as that term is generally defined in tort law. In general, persons may not insure themselves against their own intentional misconduct because the availability of insur-anee will directly stimulate an intentional wrongdoer to violate the law. See, e.g., Mason v. Fla. Sheriffs Self-Insurance Fund, 699 So.2d 268 (Fla. 5th DCA 1997) (holding that public policy precluded coverage for a deputy’s demand for sexual intercourse in return for not serving an arrest warrant). Thus, Florida courts have long held that the public policy of this state prohibits an insured from being indemnified from a loss resulting from its own true intentional acts. Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So.2d 1005 (Fla.1989); see also Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d 636 (Fla. 3d DCA 1994).
Therefore, should the conduct alleged in the suit against Griffin be read to encapsulate the type of conduct for which public policy prohibits coverage, the Plaintiff would have no claim against the agent. Since such coverage would be against public policy, this court will not recognize a claim against the agent for failure to procure that coverage. Moreover, in order to prove its misrepresentation case, Griffin was required to establish that Villari made a deliberate and knowing misrepresentation designed to cause, and actually caused the detrimental reliance by the Plaintiff. Rappoport v. Jimmy Bryan Toyota of Ft. Lauderdale, 522 So.2d 1005, 1006 (Fla. 4th DCA 1988). Since Griffin would not have been able to obtain coverage for its “true intentional acts,” there is no detrimental reliance. See State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So.2d 1210, 1213 (Fla. 5th DCA 1995).
In addition, in the absence of coercion, duress, fraud in the inducement or *431 some other independent ground justifying recission, Griffin was bound by the terms of the contract between the parties. See Merrill, Lynch, Pierce, Fenner, & Smith, Inc. v. Benton, 467 So.2d 311 (Fla. 5th DCA 1985). Florida law imposes a duty upon an insured to learn and know the contents of his insurance policy upon its delivery. Reliance Ins. Co. v. D’Amico, 528 So.2d 533 (Fla. 2d DCA 1988). In the instant case, the liability policy issued to Griffin Brothers clearly provided an exclusion for “bodily injury intentionally caused or aggravated by [Griffin Brothers.]” There is no allegation that Griffin Brothers was prevented from reading the policy and, therefore, is charged with knowledge of the provisions contained therein. Id. at 538.
The second of the two alternative bases as recognized by the supreme court in Turner to avoid the exclusive remedy provisions of the Workers’ Compensation Act only requires that the conduct of the employer be “substantially certain to result in injury or death.” Turner, 754 So.2d at 688. In Turner, the supreme court held that this “intentional tort” exception “includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury.” Id. at 691. In Travelers Indemnity Co., 889 So.2d 779, the Florida Supreme Court was presented with the specific question whether an intentional tort exclusion in an employer’s liability policy identical to the one at bar would preclude coverage for suits against the employer under this “objective-substantially-certain” theory of intentional tort. In holding that the public policy of this state does not prohibit an employer from insuring against such a risk, the court held the specific coverage exclusion involved in the present litigation did not bar coverage. Id. at 795-96. Therefore, if the allegations of the Complaint against Griffin can be read to fall under this theory of liability, coverage would have been provided under the policy issued by TCI. Since coverage would have been provided under the policy, there can be no claim for failure to procure such coverage nor any claim for misrepresentation.
In summary, regardless of the theory of liability alleged in the suit against Griffin, there could be no claim against the agent. If the allegations constitute a “true intentional tort,” public policy would prohibit coverage and, therefore, no claim could be asserted against the agent. Likewise, if the allegations against Griffin in the wrongful death claim are read as being based upon an objective-substantially-certain theory of liability, coverage would have been provided under the policy and, therefore, there could be no claim against the agent for failure to procure such coverage or for misrepresentation.
For the foregoing reasons, we affirm the trial court’s final summary judgment in this matter.

Affirmed.

STEVENSON, C.J. and POLEN, J., concur.

. The intentional tort exception to the workers’ compensation exclusive remedy provisions was codified by the Florida Legislature in 2003. Fla. Stat. § 440.11(1) (2003). In doing so, however, the Florida Legislature modified the standard announced in Turner. See Feraci v. Grundy Marine Constr. Co., 315 F.Supp.2d 1197 (N.D.Fla.2004). The Turner standard would be applicable to the instant case since the subject TCI policy was issued in 1991 and the death occurred in 1992.