CANADY, J.,
dissenting.
I dissent from the majority’s decision to quash the Fourth District Court of Appeal’s decision. For the reasons explained below, I would hold that the evidence concerning A-l’s prior status as a party defendant was properly admitted by the trial court. I would also hold that although the trial court erred in admitting evidence concerning the settlement, this error was harmless.
Evidence of A-l’s prior status as a defendant was admissible to attack the credibility of John Herring by showing that he was biased. Section 90.608(2), Florida Statutes (2006), expressly authorizes the introduction of evidence to attack the credibility of a witness by “[s]howing that the witness is biased.” This statutory provision should not be ignored in the analysis of the evi-dentiary question at issue here.
In my view, section 768.04(3), Florida Statutes (2006), does not embody a rule that trumps all other relevant rules of evidence. Although Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993), dealt with a fact pattern dissimilar to this case, it nonetheless clearly established the point that the rule of exclusion in section 768.041(3) is not invariably applied in derogation of other applicable rules or principles of law. *1087 Here, section 768.041(3) should not be applied in derogation of section 90.608(2).[5]
The evidence of A-l’s prior status as a defendant was highly probative on the issue of Herring’s credibility as an expert witness on causation. In evaluating the credibility of expert opinion testimony, it is unquestionably relevant that the opinion testimony was first given in a deposition when A-l, the corporation of which Herring is president, was a defendant in the case. At the time of his deposition testimony, Herring had an obvious motivation to give testimony assigning blame to a defendant other than A-l. And he also had a clear motivation when testifying at the trial not to forswear his prior sworn deposition testimony.
It is true that the simple fact that A-l was the manufacturer of the trusses — a circumstance known to the jury — also pointed to bias on the part of Herring as A-l’s president. But A-l’s status as a defendant pointed to a more intense motivation on Herring’s part to give testimony that was unfavorable to Elson. The trial court did not abuse its discretion in concluding that precluding the jury from hearing evidence regarding A-l’s prior status as a defendant would have unfairly compromised the jury’s ability to judge the credibility of Herring. A reasonable judge could decide that the “probative value” of the evidence of A-l’s prior status as a defendant was not “substantially outweighed by the danger of unfair prejudice.” § 90.403, Fla. Stat. (2006).
The exposure of the fact that A-l had somehow exited the lawsuit necessarily accompanied the exposure of Herring’s bias arising from A-l’s prior status as a defendant. Assuming that the fact that A-l had exited the lawsuit falls within the scope of section 768.041(3), I would nevertheless hold that allowing the jury to consider the highly probative evidence of Herring’s bias was not error. By the choice of Herring as an expert witness, the plaintiff unilaterally created the situation in which a choice was required between applying section 768.041(3) and applying section 90.608(2). I would conclude that a party who chooses to present the expert opinion testimony of a witness whose credibility is subject to impeachment for bias should not be permitted to use section 768.041(3) as a cloak to hide from the jury facts relevant to the bias of that witness.
The evidence of the settlement itself is a different matter. The fact of the settlement is not relevant to the credibility of Herring. The existence of the settlement has no probative value regarding Herring’s bias. An inference cannot reasonably be drawn that Herring would harbor a bias either in favor of Saleeby or against Elson based on the bare fact that A-l had been constrained to pay a sum of money to Saleeby in settlement of a claim brought by Saleeby against A-l. Why would it be thought that Herring would be biased in favor of someone who had sued his company? Why would it be thought that a settling defendant would be biased against a non-settling defendant? The inference of bias from the bare fact of the settlement is irrational.
And the holding in Dosdourian provides no support for the admission of the settlement agreement. The basis for the decision in Dosdourian was the fact that the settling defendant had remained in the lawsuit. In concluding that the settlement agreement was admissible, the Court observed that “ ‘the integrity of our justice system is placed in question when a jury charged to determine the liability and damages of the parties is deprived of the *1088 knowledge that there is, in fact, no actual dispute between two out of three of the parties.’ ” Dosdourian, 624 So.2d at 247 (quoting Dosdourian v. Carsten, 580 So.2d 869, 872 (Fla. 4th DCA 1991)). The Court reasoned that “the jury was entitled to weigh the [settling] codefendant’s actions in light of its knowledge that such a settlement has been reached.” Id. n. 4. The rationale of Dosdounan thus has no application here because A-l, the settling code-fendant here, did not remain in the lawsuit.
I therefore agree with the majority that the trial court erred by admitting evidence regarding the settlement. But I would not treat that error as per se reversible. I would disapprove Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989), to the extent that it suggests that the erroneous admission of evidence of a settlement is not subject to harmless error analysis. See BCK Land, Inc. v. Cook, 119 So.2d 717, 719 (Fla. 2d DCA 1960) (finding harmless error regarding admission of settlement evidence in violation of section 54.28, Florida Statutes (1957), the predecessor statute of section 768.041).
A reviewing court may “set aside or reverse a judgment, or grant a new trial on the basis of [erroneously] admitted or excluded evidence” only “when a substantial right of the party [appealing] is adversely affected.” § 90.104(1), Fla. Stat. (2006). When a judgment is challenged based on “the improper admission or rejection of evidence,” the judgment will be reversed only if “after an examination of the entire case” the reviewing court concludes “that the error complained of has resulted in a miscarriage of justice.” § 59.041, Fla. Stat. (2006). Accordingly, Saleeby is entitled to prevail on appeal only if a substantial right of Saleeby has been adversely affected and a miscarriage of justice has occurred.
Saleeby’s case turned on whether Elson was immune from tort liability as an employer pursuant to section 440.11(1), Florida Statutes (1999). Saleeby contended that Elson had lost its immunity because it engaged in conduct which was substantially certain to result in injury to Saleeby. See Turner v. PCR, Inc., 754 So.2d 683, 691 (Fla.2000) (holding that the intentional tort exception to employer immunity “includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury”).[6]
To obtain relief against Elson, Saleeby had to show that a reasonable person should have known or would have understood that Elson’s conduct in temporarily bracing the trusses was substantially certain to cause injury or death. See Turner, 754 So.2d at 688. Saleeby’s strategy at trial was to show that Elson did not fully comply with standard requirements for the temporary bracing of trusses. Accordingly, expert testimony was presented that, for example, Elson did not in all instances use the materials recommended for particular parts of the temporary G23 bracing.[7] The experts testified that the closer one adheres to the standards the less likely the trusses are to collapse. It was also shown at trial that Mr. Elson acknowledged that before commencing work, he had not read the standard summary sheet that accompanies all trusses and which contains guidance regarding truss installation. That summary sheet warns that failure to follow *1089 its recommendations can result in injury. The summary sheet specifically recommends that an engineer design the temporary bracing for trusses exceeding a specified length. At trial it was shown that neither the general contractor (Tektonica) nor Elson followed this recommendation.
The evidence at trial, however, showed that the general contractor hired Elson to install the trusses for the arena and supplied all materials for them installation. Mr. Elson testified that he is an expert in truss installation. He and his crew had years and even decades of experience installing trusses, including experience installing trusses of the size used in the arena. The evidence established that Mr. Elson and his crew had never previously experienced a roof truss collapse. According to their testimony, they applied their knowledge and years of experience in installing the trusses with the temporary bracing throughout the arena. The testimony concerning this prior experience went uncontradicted. It was also undisputed that no other trusses in the arena collapsed. Further, after the accident El-son’s crew viewed the truss manufacturer’s videotape regarding installation, and then they installed without incident the replacement trusses the same way they had previously installed all of the other trusses in the arena.
Accordingly, there was no prior similar accident, no effort by Elson to conceal a danger from the workers, and no other circumstance which provided a basis for the jury to conclude that Elson had engaged in conduct that should be treated as an intentional tort. In sum, Saleeby failed to present evidence from which the jury could conclude that Elson “engaged in conduct which was substantially certain to result in injury,” Turner, 754 So.2d at 691, a conclusion which could only be supported by “a showing greater than ‘gross negligence,’ ” Id. at 687 n. 4.
Based on the record here, there is no basis to conclude that the trial court’s error in admitting evidence regarding the settlement was a harmful error. The requisite prejudice to support overturning the judgment based on the jury’s verdict can be established neither under a harmless error standard requiring a showing of a reasonable probability of a result more favorable to the appellant if the error had not occurred, see Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979), nor under a standard requiring a showing that the appellant might have obtained a more favorable result but for the error, see National Union Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000).
I therefore would approve the result reached by the Fourth District.

. Section 90.408, Florida Statutes (2006), which deals with settlement offers and negotiations — as distinct from settlement agreements — has no application in the instant case.

. Saleeby was injured in 1999. The Legislature later codified a statutory intentional tort exception that established a virtual certainty standard that does not apply here. See § 440.11(1), Fla. Stat. (2003).

. For example, for the cleats Elson used one-by-four boards and eight-penny nails, not two-by-fours and sixteen-penny nails. Elson testified that in his experience this nevertheless met the industry standard.