COHEN, J.,
dissenting.
The Legislature crafted the current version of the Workers’ Compensation Law in a manner that allows recovery outside of its parameters in only the narrowest of circumstances. As correctly noted by the' majority, the plaintiff must prove by clear and convincing evidence that “[t]he employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee ....”§ 440.11(l)(b)2., Fla. Stat. (2010). This legislative enactment was in response to the Florida Supreme Court ruling in Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000).
In Turner, the supreme court accepted jurisdiction to review a question certified as one of great public importance: whether an expert’s affidavit, wherein he opined that an employer exhibited a deliberate intent to injure or engaged in conduct substantially certain to result in injury or death to an employee, was sufficient to create a factual dispute, precluding summary judgment. See id. at 684. That question was never explicitly decided.[9] However, the court reaffirmed the existence of the intentional tort exception to employer immunity under the workers’ compensation scheme, and held that the applicable standard was whether the injury was substantially certain to occur. See id. at 691. Subsequently, the Legislature amended the statute to raise the standard from substantial certainty to virtual certainty. See Gorham v. Zachry Indus., Inc., 105 So.3d 629, 633 (Fla. 4th DCA 2013) (citing Travelers Indem. Co. v. PCR, Inc., 889 So.2d 779 (Fla.2004)). The majority does not challenge the observation made in Gorham that, to date, not one Florida case has upheld a finding that an injury or death was virtually certain to occur. See id. at 634.
However, the fact that the burden is set high does not mean that it is, or should be, illusory or unattainable. By nature, these cases are fact-specific, and the point at *535 which an employer’s conduct crosses the line and becomes an intentional tort is difficult to determine. In List Industries, Inc. v. Dalien, the Fourth District observed that the trial judge should serve as the gatekeeper. See List Indus., Inc. v. Dalien, 107 So.3d 470, 474 (Fla. 4th DCA 2013) (quoting Fleetwood Homes of Fla., Inc. v. Reeves, 833 So.2d 857, 864-65 (Fla. 2d DCA 2002), rev’d on other grounds, 889 So.2d 812 (Fla.2004)). Our role should not be to second guess the trial judge, who undoubtedly understood his responsibility. The trial judge reviewed the facts of this case and decided there was enough evidence to make this a question of fact for the jury. The jury validated the trial court’s determination with its verdict.
The majority opinion seizes upon facts that call into question whether the tragic death of Victor Lizarraga was virtually certain to occur. I agree with the majority that the fact that three other columns were erected under the same circumstances and did not fall weighs heavily against such a finding. Where I diverge from the majority opinion is that I believe there are additional facts and evidence that made this a question of fact for the jury-
Specifically, Donnie Langdale, the project superintendent for R.L. Haines, knew that an anchor bolt that had been set in one of the columns had raised up.[10] The bolt could not have moved if the epoxy had been properly mixed and allowed to cure. Those working at the site knew this; indeed, the workers who observed the bolt rise up immediately stopped work and notified their supervisor.
Additionally, the evidence reflected that Langdale never informed the project engineer about the bolt rising up. Langdale and the project engineer testified that notice of the movement of a bolt would be a “red flag” indicating an installation failure, which would necessitate stopping work and performing additional testing before attempting to erect the steel column. Despite knowing about the bolt rising, and knowing that the cure time on the column that ultimately fell and killed Lizarraga had not passed, Langdale told Metal Bilt employees that it was safe to set the steel columns. Worse yet, Langdale falsely represented to Metal Bilt’s site superintendent that both the project engineer and owner’s representative had indicated they were “good to go” for erecting the column.
Furthermore, Metal Bilt’s project manager, who was very experienced with the type of construction involved in this case, testified that if the bolts are not secure, the chance of someone being injured is “more than certain.” He explained: “The column is going to fail. The anchor bolts aren’t going to bond that column to the concrete.” That is precisely what occurred here, resulting in a tragic death.
In my view, sufficient evidence supported the conclusion that the employer received “explicit warnings specifically identifying a known danger.” See § 440.11, Fla. Stat. Langdale knew that a bolt had moved, which was evidence of an improper setting of the anchor bolts. Langdale further knew that the time for the epoxy to cure had not passed. Evidence in the record demonstrated that those in the industry, including Langdale, would know that a steel column weighing over 2,000 pounds, if not properly secured, would fall. Nonetheless, despite this knowledge, Langdale misrepresented the *536 danger and claimed that an engineer had given the all clear to raise the column. I believe these facts were sufficient to support the jury’s verdict and would affirm. See Stirling v. Sapp, 229 So.2d 850, 852 (Fla.1969) (“The trial judge is authorized to grant [a motion for judgment notwithstanding the verdict] only if there is no evidence or Reasonable [sic] inferences to support the opposing position.” (citing Hendricks v. Dailey, 208 So.2d 101 (Fla.1968))); see also Richey v. Modular Designs, Inc., 879 So.2d 665, 667 (Fla. 1st DCA 2004) (“[M]otions for judgment notwithstanding the verdict ... should be resolved with extreme caution.” (quoting Sapp, 229 So.2d at 852)).

. The court quashed the decision of the lower court and remanded the case, finding the existence of a genuine issue of fact.

. While Langdale denied knowledge of the bolt issue, the jury apparently did not believe his testimony. We must view the evidence in the light most favorable to the appellees. See, e.g., Richey v. Modular Designs, Inc., 879 So.2d 665, 667 (Fla. 1st DCA 2004) (citing Stirling v. Sapp, 229 So.2d 850, 852 (Fla.1969)).